UNITED STATES, Appellee

v.

BOBBY L. KEITH, Private, U. S. Army, Appellant

1 USCMA 442, 4 CMR 34

No. 226

Decided July 3, 1952

Col. M. W. Ludington, USA, and 1st Lt. Thomas E. Cole, USA, for Appellant.
Lt. Col. Thayer Chapman, USA, for Appellee.

## Opinion of the Court

Paul W. Brosman, Judge:

### I

We are here concerned with the question of whether this Court must affirm either the findings of guilty and sentence, or the sentence ·alone, as to an

444

accused, who has been convicted of the commission of two offenses, if the sentence, as imposed, and approved by service reviewing authorities, is legally supported by one crime, of which he was lawfully convicted, regardless of infirmities in his conviction of the other.

This case is before us on petition for review granted, without specification of issues, on December 21, 1951, pursuant to the provisions of the Uniform Code of Military Justice, Article 67(b) (3), 50 USC § 654. Petitioner was charged with misbehavior before the enemy, in violation of Article of War 75, 10 USC § 1547; and desertion with intent to remain away permanently, in violation of Article of War 58, 10 USC § 1530. The specification of the first charge alleged that the accused, a member of the 9th Infantry Regiment, 2d Infantry Division, shamefully abandoned his squad at Chigu-Ri, Korea, and sought safety in the rear, at a time when his unit was engaged with the enemy. The specification of the second charge alleged that Keith deserted the service of the United States at Chigu-Ri, Korea, on or about March 3, 1951, and remained absent in desertion until he was returned to military control at Pusan, Korea, on or about April 10, 1951. On trial by general court-martial, held at Hoengsong, Korea, on July 13, 1951, the accused pleaded not guilty to all charges and specifications, but was found guilty as charged and sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for five years. All findings and the sentence were approved by the convening authority, and affirmed without opinion by a board of review in the office of The Judge Advocate General, United States Army.

While the offenses in this case were committed while the Manual for Courts-Martial, U. S. Army, 1949, remained in effect, and the accused was charged with violations of the Articles of War, the hearing was held subsequent to May 31, 1951. Accordingly, the provisions of the Uniform Code of Military Justice and of the Manual for Courts-Martial, United States, 1951, governed the conduct of the trial.

## II

Petitioner contends on this appeal that the finding of guilty of the charge of misbehavior is contrary to law for the reason that the law officer failed entirely to instruct the court-martial as to the elements of the offense, as required by the Uniform Code of Military Justice, Article 51(c), 50 USC § 626. The record discloses that following arguments of counsel, and immediately before the court closed to vote on the findings, the law officer charged the court concerning the offense of desertion with intent to remain away permanently, the presumption of innocence, and the burden of proof. However, no instruction whatever was given on the elements of the offense of misbehavior before the enemy. This is conceded by Government counsel. Clearly this was prejudicial error. Article 51(c), supra; Manual for Courts-Martial, United States, 1951, paragraph 73a; United States v. Clay (No. 49), 1 USCMA 74, 1 CMR 74, decided November 27, 1951.

However, it appears that the accused was lawfully convicted of the crime of desertion. This was tacitly admitted in the brief and argument of appellate defense counsel, and, after examination of the record of trial, we so hold. It is vigorously contended—if we correctly apprehend the Government's position—that when an accused has been convicted under several specifications, and a sentence not exceeding that legally permissible in the case of conviction under a single specification has followed, the findings and sentence, or at least the sentence, must stand if supported by a valid conviction under a single specification regardless of infirmity in the others, and regardless of whether the trial court would, in fact, have imposed that sentence had it recognized the invalidity of the other findings of guilty. In support of this proposition we are directed to Claassen v. United States, 142 US 140, 35 L ed 966, 12 S Ct 173; Evans v. United States, 153 US 608, 38 L ed 830, 14 S Ct 934; Pinkerton v. United States, 328 US 640, 90 L ed 1489, 66 S Ct 1180, and numerous other Federal cases. The

**445**

following excerpt from the Claassen case, supra, states the general rule which has been invoked in many Federal cases (p 146):

"In criminal cases, the general rule, as stated by Lord Mansfield before the Declaration of Independence, is 'that if there is any one count to support the verdict, it shall stand good, notwithstanding all the rest are bad.' (Citing cases). And it is settled law in this court, and in this country generally, that in any criminal case a general verdict and judgment on an indictment or information containing several counts cannot be reversed on error, if any one of the counts is good and warrants the judgment, because, in the absence of anything in the record to show the contrary, the presumption of law is that the court awarded sentence on the good count only."

The Government's argument runs as follows: The record discloses that there was in this case a valid finding of guilty of desertion. This offense in time of war is punishable by death or such other punishment as a court-martial may direct. See Article of War 58, supra; Uniform Code of Military Justice, Article 85(a), 50 USC § 679. The Table of Maximum Punishments has been suspended as to offenses committed in Korea involving, among others, that of desertion. Executive Order No. 10149, August 8, 1950, and Executive Order No. 10247, May 29, 1951. The sentence in the case at bar consisted of confinement for a term of five years, together with dishonorable discharge and total forfeitures—one well within the permissible maximum for the offense of desertion. Assuming that the conviction of misbehavior before the enemy is invalid because of the failure of the law officer to instruct on the essential elements thereof—the argument continues—there remains a valid finding of guilty of desertion, for which a sentence of death would have been legal, and for which the court imposed an obviously valid sentence of only five years confinement with accessories. It is asserted·that, so long as the sentence of either a Federal court or a court-martial does not exceed the maximum

446

sentence imposable under one good count of an indictment, or one good charge in court-martial proceedings, an appellate court will not disturb the sentence or reverse the conviction. Accordingly, it is concluded that reversal of any part of the judgment below is unwarranted and unnecessary, in view of the manifestly legal conviction of the offense of desertion, which amply supports the sentence imposed.

### III

Although it is true that the Claassen case, supra, expresses a doctrine often cited in Federal civilian courts, we believe that it has not been applied without substantial qualification, and, in addition, that in some of its forms, at least, it is distinctly inapplicable to the system of military justice under which we operate because of essential differences between the civilian and military systems of procedure. A scrutiny of the cases purporting to apply the "Claassen rule" suggests that instead of a single principle operative generally in the area, there exist in point of fact no less than five more or less closely related doctrines. As we apprehend them, these are set out below:

(1) If an indictment contains several counts, convictions under one or more of which are valid, and if a general verdict was rendered on the indictment, *the judgment on the verdict* will not be set aside even though some of the counts are defective, or the convictions thereunder the subject of infirmity for one reason or another. This rule we believe to be derivable from dicta appearing in Claassen v. United States, supra. It appears to be inapplicable where the counts in the indictment set out distinct and separate offenses, but to apply only where substantially the same offense has been charged in different ways. Ballew v. United States, 160 US 187, 40 L ed 388, 16 S Ct 263. This doctrine is based theoretically on the presumption that the trial court rendered judgment on the good count or counts only. See the following Federal cases: Snyder v. United States, 112 US 216, 28 L ed 697, 5 S Ct 118; Evans v. United States, 153 US 584, 38 L ed 830, 14 S Ct 934; Bond

v. Dustin, 112 US 604, 28 L ed 835, 5 S Ct 296.

(2) If there is a general verdict covering several counts alleged in one indictment and a general sentence on the verdict, *this sentence* will not be disturbed on appeal in the presence of a supportable conviction under one count, and if the sentence is one legally imposable for the offense involved. This rule seems to be based on the presumption that the trial judge imposed sentence under the good count only. It appears to have been applied in United States v. McDermott, 131 F2d 313 (CA 7th Cir) ; Sugarman v. United States, 35 F2d 663 (CA 9th Cir) ; Abrams v. United States, 250 US 616, 63 L ed 1173, 40 S Ct 17; United States v. Williams, 175 F2d 715 (CA 7th Cir).

(3) If an accused is found guilty under several counts of a single indictment, and concurrent and legally permissible sentences are imposed, regardless of the presence of a general verdict, *neither the verdict nor the sentence* will be reversed on appeal, if a conviction under any one count remains to support the sentence. This rule seems to be based on a "harmless error" principle. Since the sentences in such a situation are to run concurrently, it has been thought that the accused would not be aided materially by otherwise proper reversals. See United States v. Hirabayashi, 320 US 81, 87 L ed 1774, 63 S Ct 1375; Brooks v. United States, 267 US 432, 69 L ed 699, 45 S Ct 345, 37 ALR 1407; Pierce v. United States, 252 US 239, 64 L ed 542, 40 S Ct 205; Pinkerton v. United States, 328 US 640, 90 L ed 1489, 66 S Ct 1180; United States v. Chiarelli, 192 F2d 528 (CA 7th Cir) ; Debs v. United States, 249 US 211, 63 L ed 566, 39 S Ct 252; Bowen v. United States, 153 F2d 747 (CA8th Cir).

(4) If an accused is convicted under an indictment containing multiple counts, regardless of the presence of a general verdict, and a general sentence is imposed, which is the only legally permissible sentence for a valid conviction under a single count, or is a sentence appropriate for a valid conviction under a single count, neither the verdict nor the sentence will be reversed for error in other counts. This rule, like that mentioned last above, is bottomed on the principle of "harmless error." It and it only was applied in Claassen v. United States, supra. See also United States v. Perplies, 165 F2d 874 (CA 7th Cir) ; Pinkerton v. United States, 151 F2d 499 (CA5th Cir) ; United States v. Hornstein, 176 F2d 217 (CA7th Cir) ; Yielding v. United States, 173 F2d 46 (CA5th Cir).

(5) If an accused is found guilty under an indictment embracing several counts, regardless of the character of the verdict, the sentence will not be reversed on appeal if it is legally justified and appropriate for a valid conviction under a single count. It will be observed that this principle differs from that set out in the immediately preceding paragraph only in that it applies solely to the sentence, and not to the verdict and sentence. Under it the appellate court must leave the sentence untouched regardless of the fact that one or some convictions are set aside. This rule was applied in Carter v. McClaughry, 183 US 365, 46 L ed 236, 22 S Ct 181.

## IV

We turn now to a consideration of each of the foregoing principles from the standpoint of the appropriateness of importation into the scheme of military justice of which we are an element. At the outset we are met by the theory upon which the first two forms of the principle are based— that is, that in the absence of anything in the record to show the contrary, the presumption of law is that the court awarded judgment and sentence on the good count only. We are certain that this presumption cannot possibly operate in the sphere of military justice. In a civilian court the judge imposes sentence, whereas it is the members of a court-martial who adjudge the penalty in a military trial. While a civilian judge is presumed to be learned in the law, the members of a court-martial cannot realistically be assumed, required, or expected to be familiar with technical legal rules. Thus, while there

may be basis in reason for holding that the court in the civilian area shall be deemed to comprehend the procedural complexities of the situation, and to award judgment and sentence on the valid count only, the same presumption cannot be indulged logically in the military system. Indeed, the presumption there would seem to point in an antithetically opposed direction.

Moreover, in so far as either of the first two forms of the doctrine under consideration are applicable only where distinct and separate offenses are not involved—and this is certainly true as the initial phrasing has been applied—they can be of no utility to us in the present instance and of little worth in most other military cases. In the case at bar the offenses alleged were quite distinct and the elements of each manifestly not the same. See Manual for Courts-Martial, supra, paragraph 76a (8). In general, too, a multiplication of charges arising out of the same transaction is frowned on in military law. See Manual for Courts-Martial, supra, paragraph 26.

On the other hand, the joinder of entirely separate, distinct, and completely unrelated offenses is not condemned by military procedure. Instead, for practical reasons of dispatch it has come to be the customary practice to join all known offenses against an accused and to dispose of all at a single trial. See Manual for Courts-Martial, supra, paragraph 30f. However, in civilian practice it is unusual, and often improper, to join unrelated offenses in the same trial. See Rule 8 (a), Federal Rules of Criminal Procedure, 18 USC Rule 8(a). This rule provides in substance that several offenses may be charged in separate counts of the same indictment, if the offenses are of the same or similar character, or are based on the same transaction, or on two or more connected transactions, or transactions constituting parts of a common scheme. No such limitation exists in the sphere of military justice. But see Manual for Courts-Martial, supra, paragraph 26c. Accordingly, it is not unusual to find, for example, charges of absence without leave joined with homicide,

larceny with escape from confinement, and the like. Thus an offense involving moral turpitude may properly be joined with an offense of a purely military, an unconnected and perhaps a relatively minor, character. Moreover, in the case of offenses committed in the Far East, for which, as has been seen, the Table of Maximum Punishments has been suspended, it is possible for conviction of a military offense to support legally any sentence whatever imposed by a court-martial. An example of this possibility is found in the following suppositious situation. An accused in Korea is charged and convicted of premeditated murder and a three-day absence without leave. He is sentenced on the basis of both offenses to dishonorable discharge, total forfeitures, and confinement at hard labor for life. On appeal to this Court it is found that the homicide conviction was bottomed on insufficient evidence as a matter of law. Under the first form of the rule mentioned above it would be necessary to affirm the findings and sentence in the imagined case, and under the second phrasing at least the sentence—for the reason that the valid finding of guilty of unauthorized absence legally supports the life sentence imposed. It is obvious that such a result must not be permitted. It must also be manifest from what has been said that neither of the first two aspects of the rule under consideration may safely be transported into the system of judicial administration of which this Court is a part.

The third expression of the so-called Claassen rule reported above—that involving the use of concurrent sentences — presents little difficulty, and obviously can have no place in the military justice scene. The concurrent sentence, in the sense in which that device is utilized in the administration of criminal law in the civilian community, is entirely without precedent in military procedure. See Manual for Courts-Martial, supra, paragraphs 76, 125, 126, 127. Under military law a single inclusive sentence is imposed— the sum of individual punitive actions deemed legal and adequate—regardless

of the number or character of the offenses of which the accused has been convicted. It will be obvious that a rule which has its basis in a concurrent sentence situation is not an appropriate subject for importation into a system in which the instrument lying at the basis of the principle is unknown, and a unitary sentence is always assessed.

## V

The fourth expression accorded the "rule" under consideration should perhaps be restated for better understanding of our discussion of it. By its terms, if an accused is convicted under an indictment containing several counts —regardless of the character of the verdict—and a general sentence is imposed, which is either mandatory or appropriate in fact and law for a valid conviction under a single count, neither the verdict nor the sentence will be reversed for error in other counts. Although some doubt is entertained as to the military utility of this principle, it is conceivable that occasional use may be made of it in so far as it is based upon a concept of "harmless error" appropriate in the field of military justice. If the sentence in question is mandatory for a valid conviction under one specification, or if it has been deemed appropriate for a similar finding of guilty by a judicial agency empowered to make such a determination of adequacy, there is indeed no reason for reversal as to sentence in the absence of special factors materially prejudicing the substantial rights of the accused. Because of the inclusion within its terms of both findings and sentence, it is apparent that special care must be exercised to discern the possible presence of prejudice factors, one or some of which are likely to be found when the situation of the accused is scrutinized against a background of military and related procedures. Reference is made here to the fact that the affirmance of an erroneous finding of guilty may operate to prejudice materially—although collaterally—the rights of an accused military person quite apart from its possible effect on sentence quantum, and even though the sentence

may be regarded as entirely unaffected by such finding. This may be illustrated by the following examples.

Under applicable service regulations the nature of the offenses of which an accused has been convicted, among other factors, determines the place of confinement. Thus he may be committed to a Federal civilian, or a purely military, penal institution, depending on the character of his crimes. Special Regulations · No. 600–330–1, May 8, 1951, and Changes No. 1, May 13, 1952. This in turn has a direct bearing on such considerations as good conduct time and opportunities for parole— with markedly the more generous provisions applicable to inmates of military institutions. See Army Regulations No. 600–340, May 22, 1951, paragraph 6*h;* Army Regulations No. 600–360, July 25, 1950, paragraph 3; 18 USC §§ 4161, 4202. It is apparent, therefore, that affirmance of a finding for any reason invalid may result in confinement in a Federal penitentiary and thus prejudice an accused's rights by extending his actual period of incarceration.

A further occasion of possible collateral prejudice is related to the exercise of clemency. It is recognized that both the nature and number of offenses of which a prisoner has been convicted are considered carefully by authorities empowered to exercise specific clemency. Accordingly, an erroneous finding of guilty, which has been affirmed on the Government's theory, may powerfully affect the rights of a prisoner through its effect on the Clemency and Parole Board. See Army Regulations No. 600–345, May 28, 1951, paragraph 6; Army Regulations No. 600–332, May 24, 1951, paragraph 1*c.*

Convictions of desertion raise a special problem in the field of collateral prejudice. A conviction of this offense carries with it the loss of important civil rights and other benefits. See 8 USC § 801*g;* 10 USC §§ 906, 1432. It follows that the rights of an accused person, whose invalid conviction of desertion is affirmed under the Government's view, will be seriously affected, even though the sentence imposed is

amply supported by a conviction of some other offense of which he was legally found guilty.

A further example of indirect prejudice to the substantial rights of an accused in the area under discussion may be found in the possible use of affirmed erroneous findings of guilty against him as previous convictions during the post-finding stage of a subsequent trial by court-martial. There can be little doubt that evidence of prior convictions can, does, and properly should influence members of such a court in the imposition of sentence. Accordingly an accused may be injured substantially if a previous conviction is considered without warrant. As we said in United States v. Zimmerman, (No. 261, 1 USCMA 160, 2 CMR 66, decided February 7, 1952:

". . . We cannot say that the court was not influenced by the record of previous convictions. . . . It would be the unusual—even the unreasonable—man who would not be influenced by this history of prior offenses in assessing the degree of punishment to be given. We would have to close our eyes to reality to assume the contrary."

There can be no doubt of the applicability of the fifth principle to the area of military justice. That principle, it will be recalled, states that if an accused is properly found guilty under any one of several counts, the sentence will not be disturbed on appeal if it is legally justified and appropriate for that count. This concept was, we think, properly applied to a court-martial conviction in Carter v. McClaughry, 183 US 365, 46 L ed 236, 22 S Ct 181. In that case, the accused had been convicted by general court-martial under four charges with specifications under each. The President, as reviewing authority, had disapproved certain of the specifications. One of the contentions made on appeal was that the sentence had ceased to be the sentence of the court-martial because of the disapproval of certain specifications by the President. The Court referred to the Claassen case, supra, for a statement

of the applicable general principles, and held that the action of the President would not be disturbed. This holding appears to have been based on the ground that the President as a reviewing authority—in the language of the Court, "a court of last resort"—had determined that the sentence was appropriate for the valid findings of guilty. We quite agree that if a military judicial agency empowered to do so has determined that the original sentence is appropriate for a single valid conviction in a case involving several specifications, we are powerless to disturb that determination on review.

## VI

We come now to an application of what has been said earlier in this opinion to the facts of the case at bar. It is the contention of the Government that through the application of one or another of the principles discussed above, we should affirm either the findings of guilty of both misbehavior and desertion herein and the sentence imposed, or, apart from possible disapproving action on the first charge and its specification, we should affirm the sentence assessed against the accused. We are unable to accept this view. The first three phrasings of the Federal civilian rule invoked need not detain us. We have already expressed our reasons for holding that all of them are inapplicable to the military justice situation. The fourth may be disposed of with equal brevity. The risk of collateral but specific prejudice to substantial rights of petitioner of the sort illustrated in preceding paragraphs wholly deprives this form of the doctrine of possible utility here. Under the facts of this case we simply cannot with safety affirm the erroneous findings of guilty of misbehavior before the enemy. Finally, we cannot apply the fifth principle, since no military judicial agency with power to do so has determined that the sentence in this case is appropriate for the offense of desertion alone. This Court has no statutory authority to make such a determination as a matter of fact and in this case. We prudently leave for fu-

ture consideration the question of whether appropriateness—or its opposite—may be determined by us in a proper case as a matter of law.

In support of its assertion that a Claassen-like principle should be applied to this case, the Government has cited two District Court cases from the same judicial district. These are Burns v. Sanford, 77 F Supp 464 (DC, Ga), and Harris v. Sanford, 78 F Supp 963 (DC, Ga), both habeas corpus cases. Burns v. Sanford, supra, has been considered and appears to be inapplicable to the problem at hand, and the relevant language in the Harris case is regarded as dicta. However, to the extent to which, by implication or expression, either suggests views different from those expressed herein, we believe that an inadequate recognition of essential differences—both theoretical and practical—between the civilian and military legal procedures is reflected.

## VII

For reasons mentioned earlier herein the decision of the board of review as to the offense of misbehavior before the enemy is reversed. However, the decision as to the offense of desertion is affirmed. Were the setting of the present case a civilian one, we would experience no difficulty in remanding to the court trying the accused for reconsideration of sentence or for retrial. In a military situation, however —and for reasons which must be apparent to all—this disposition of the matter is impracticable, if not impossible of achievement. In view of the lapse of time involved, it is highly probable that the court-martial which tried the accused, Keith, is no longer functioning as such. Through change of assignment, or otherwise, its members, indeed, may be scattered beyond recall. Even assuming the contrary in the present situation, the mentioned impossibility is certain to exist in many others involving an identical problem. Remand to the trial forum, for virtually any purpose in the military scene, is a difficult business, and remand from this Court simply an unworkable device. Fortunately it is also an unnec-

essary one. The Uniform Code of Military Justice, Article 66(c), 50 USC § 653, provides as follows:

"In a case referred to it, the board of review shall act only with respect to the findings and sentence as approved by the convening authority. It shall affirm only such findings of guilty, and *the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.* In considering the record it shall have authority to weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses." [Emphasis supplied]

Had the board of review, following its appearance before that body, disapproved the findings of guilty as to the misbehavior charge in the present case, it could have affirmed only "such part or amount of the sentence, as it . . . [found] correct in . . . fact and . . . [determined], on the basis of the entire record, should be approved." This Court is without statutory authority to act in such a manner. We may, however, correct a board of review in matters of law—and this we have done in the instant case with respect to board action on the charge specifying an instance of misbehavior. Accordingly, we now remand the case to The Judge Advocate General, United States Army, for reference to the board of review for the purpose of determining the adequacy of the sentence. See Uniform Code of Military Justice, Article 67(f), 50 USC § 674. In doing this we are not to be understood as expressing any view concerning the appropriateness to the offense of desertion of the sentence adjudged by the court-martial which tried petitioner. We merely suggest that, in the absence of a sentence exceeding maximum legal limits, we are, by the statute creating this Court, without authority to determine the question.

Chief Judge QUINN and Judge LATIMER concur.