Edward EDWARDS, Appellant,

v.

Paul J. MADIGAN, Warden, United
States Penitentiary, Alcatraz,
California, Appellee.

No. 16595.

United States Court of Appeals
Ninth Circuit.

July 15, 1960.

Molinari, Casalnuovo & Berger, San
Francisco, Cal., for appellant.

Lynn J. Gillard, U. S. Atty., John Kaplan, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before JERTBERG, MERRILL and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

Edward Edwards by separate courts-martial was tried for and convicted of four distinct offenses committed while incarcerated and serving military sentences at certain military penal institutions. A sentence was imposed upon each conviction. He filed a petition for writ of habeas corpus in the United States District Court alleging that all four sentences were required to be served concurrently under the Uniform Code of Military Justice (Chapter 47, Title 10 U.S.C.A., Armed Forces), and since the longest of the four sentences had been completed, he was entitled to his release. The court issued an order to show cause and held a hearing which resulted in an order denying the petition.[1] Upon request of the petitioner, the lower court permitted the appeal in forma pauperis. Jurisdiction is conferred by 28 U.S.C.A. § 2253.

The facts regarding these four sentences, so far as pertinent, reveal that on two occasions, August 14, 1951 and October 1, 1951, appellant was sentenced by courts-martial to serve one and three years confinement, respectively, for assault committed while incarcerated at the United States Disciplinary Barracks at Camp Cook, California. Both sentences were subsequently directed to be served at the United States Disciplinary Barracks at Fort Leavenworth, Kansas. On September 3, 1952 appellant was convicted by court-martial of mutiny and destruction of government property at Fort Leavenworth; he was sentenced to ten years confinement, which was later reduced to seven years after a clemency hearing. On February 26, 1953, while still incarcerated at Fort Leavenworth, he was again convicted of assault and sentenced to eight months confinement.

Appellant was transferred to the United States Penitentiary at Atlanta, Georgia on September 11, 1953 and later transferred to the United States Penitentiary at Alcatraz on April 14, 1954. On the date of the hearing of his petition in the court below, May 7, 1959, appellant had lost 673 days of good time, and his then terminal date, with maximum allowable good time, was October 9, 1961.[2]

Appellant contends, however, that this computation is based on the erroneous assumption that all sentences are to be served consecutively or independently, when in fact Congress has provided for concurrent sentences under Article 57(b) of the Uniform Code of Military Justice. 10 U.S.C.A. § 857(b). Prior to the enactment of the Uniform Code in 1951 Congress had not enacted any legislation dealing with the procedures to be followed with respect to multiple military sentences. Appellant nevertheless argues that Congress has effected a "statutory change" by the following enactment of Article 57(b):

"Any period of confinement included in a sentence of a court-martial shall begin to run from the date the sentence is adjudged by the

---

1. The order of the District Court indicates that this was the second abortive petition for a writ of habeas corpus filed by the petitioner and presented substantially the same ground as that stated in the earlier petition, which was denied on October 31, 1958.

2. It is possible that appellant may be released from Alcatraz on November 26, 1960 and returned to the custody of the military to serve out the remainder of his one year sentence which has been interrupted by his three later sentences. This is based on 18 U.S.C.A. § 4083 which prohibits service of a sentence for an offense "punishable by imprisonment for one year or less" in a federal penitentiary. The custodian of records at Alcatraz indicated at the hearing below that the present policy was to turn over military prisoners sometime prior to completion of their full sentence to serve out the balance of their term. Although appellant argued below that this statutory provision was mandatory and required his release immediately, his argument was premature and he has abandoned it on appeal. We express no view on whether it is or is not mandatory.

court-martial, but periods during which the sentence to confinement is suspended shall be excluded in computing the service of the term of confinement."

Appellant's construction of this section is based on the premise that military law has long recognized consecutive sentences, as witnessed by the language of Paragraph 401 of the Manual for Courts Martial, 1917:

"When soldiers awaiting the result of trial or undergoing sentence commit offenses for which they are tried, the second sentence will be executed upon the expiration of the first * * *."

The same basic provision is contained in paragraph 401 of the Manual for Courts Martial, 1921. Appellant urges that since the language of these manuals is not found in the above-quoted provisions of Article 57(b), Congress must have intended to ignore the long established consecutive sentence procedure in favor of concurrent sentences, so that a second sentence would now commence on "the date the sentence is adjudged" and while the first is still being served.

The Secretary of the Army has adopted a contrary position in implementing the statute by Army Regulation 633–30, which provides, in pertinent part, as follows:

"4. Operation of Sentences.

* * * * * *

"b. *Multiple Sentences.* A sentence to confinement adjudged by a court-martial will not be served concurrently with any other sentence to confinement adjudged by a court-martial or civil court.

"(1) When a prisoner serving a court-martial sentence to confinement adjudged on or after 31 May 1951 is subsequently convicted by a court-martial for another offense and sentenced to a term of confinement, the subsequent sentence, upon being ordered into execution, will begin to run as of the date adjudged and will interrupt the running of the prior sentence. After the subsequent sentence has been executed fully, the prisoner will resume the service of any unremitted interrupted sentence to confinement. * * * *"

Appellant's ultimate contention, therefore, is that the above regulation is in fatal conflict with the provisions of Article 57(b) and is therefore invalid.

■ We cannot agree with the appellant's basic premise that Congress intended to and did provide for concurrent sentences by enacting Article 57(b).

It is true that in civil law separate sentences are generally presumed to run concurrently. McNealy v. Johnston, 9 Cir., 1938, 100 F.2d 280; United States v. Chiarella, 2 Cir., 1954, 214 F.2d 838; Annotation, 18 A.L.R.2d 511. However, military tribunals enforce and apply a completely separate and distinct system of law:

"* * * the law which governs a civil court in the exercise of its jurisdiction over military habeas corpus applications cannot simply be assimilated to the law which governs the exercise of that power in other instances. It is sui generis; it must be so, because of the peculiar relationship between the civil and military law.

"Military law, like state law, is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment."

Burns v. Wilson, 1953, 346 U.S. 137, 139, 73 S.Ct. 1045, 1047, 97 L.Ed. 1508; See also, Dynes v. Hoover, 1857, 61 U.S. 65, 15 L.Ed. 838; Carter v. McClaughry, 1902, 183 U.S. 365, 22 S.Ct. 181, 46 L. Ed. 236; Annotation, 15 A.L.R.2d 387.

From the earliest days of military law a court-martial sentence has consistently and invariably been considered an entirety, no matter how many charges or specifications are involved, encompassing within its terms the total punishment for all offenses upon which the defendant was adjudged guilty. Carter v. McClaughry, supra; United States v. Keith, 4 C.M.R.

34, 1 U.S.C.M.A. 442; 1 Winthrop (2nd Ed.) 614. The opportunity for confusion and possible error resulting from multiple sentencing after a single trial involving several offenses, e. g., whether the several sentences were intended to run concurrently or consecutively, is simply not afforded in military tribunals where only one integral sentence is meted out.

▉ It is clear from what has been said, then, that the concurrent sentence is unknown to military law in the situation where several offenses are punished by a single sentence. Mosher v. Hudspeth, 10 Cir., 1941, 123 F.2d 401; United States v. Keith, supra. Nor has the concurrent sentence principle been applied where a defendant was convicted and sentenced for one military offense while serving another; each sentence was still required to be served independently, with the second beginning only after the first was completed, i. e., consecutively. Mosher v. Hudspeth, supra; O'Malley v. Hiatt, D.C.Pa.1947; 74 F.Supp. 44; Para. 401, Manuals for Courts Martial, 1917 and 1921.

It is difficult to see how these well established and traditional sentencing procedures could be so emphatically changed by the language of Article 57(b). We are not faced here with a "statutory change," as appellant contends, for the consecutive sentencing procedure contained in the Manuals for Courts Martial was created by administrative regulation rather than by statute; we are faced with the question of whether Congress intended by Article 57(b) to ignore consecutive, in favor of concurrent, sentencing.

The plain language of the statute, quoted above, would appear to require that a sentence must commence immediately after its adjudication, unless suspended. The rather sparse legislative history indicates only the following: "This article is new * * * Subdivision (b) requires a sentence of confinement to begin to run on the date that it is adjudged even though the accused is not actually in confinement, unless the sentence is suspended." 2 U.S.Code Cong. Service, 81st Cong.1950, p. 2249, S.R. 486, June 10, 1949, H.R. 491, April 28, 1949, to accompany H.R. 4080.

In construing the same language in a substantially identical case, the Fifth Circuit stated:

"If Article 57(b) of the Uniform Code of Military Justice envisioned so drastic a change in the system of military law as to provide that successive military sentences would in future run concurrently, it would seem that such purpose would have been alluded to in the voluminous hearings which accompanied enactment of the Uniform Code. No such purpose appears in the legislative history of the Act. Instead, it would seem that that article was devised simply to insure that prisoners receive credit for time served in confinement after sentence, while the record of trial is undergoing review as provided by the Code."

McDonald v. Lee, 5 Cir., 1954, 217 F.2d 619, 623.[3] We agree that in reading Article 57(b) nothing more can be gleaned than is succinctly stated therein, and we note a complete absence of any language

3. The Supreme Court granted certiorari in the McDonald case, but then vacated the judgment of the Court of Appeals and remanded the case to the District Court to dismiss the petition because the appellant had been discharged from prison and the cause had become moot. Lee v. McDonald, 1955, 349 U.S. 948, 75 S. Ct. 893, 99 L.Ed. 1274. The discharge occurred after the petition for certiorari was filed but before any action could be taken by the Supreme Court. We attach no significance to this action in regard to the merits of the case, for the dismissal was apparently deemed necessary in order to preclude the judgment below from becoming res judicata. See Duke Power Co. v. Greenwood County, 1936, 299 U.S. 259, 57 S.Ct. 202, 81 L.Ed. 178; United States v. Munsingwear, Inc., 1950, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36; Moore's Federal Practice (2nd Ed. 1953), Vol. 6, § 57.-13, pp. 3071–3074. Nevertheless, the reasoning of the McDonald decision is persuasive and compelling.

which would indicate an intention to adopt concurrent sentencing.

■■ The Secretary of the Army has statutory authority to issue regulations (5 U.S.C.A. § 22), and they are presumptively valid unless arbitrary and unreasonable, or "plainly and palpably inconsistent with law." Boske v. Comingore, 1900, 177 U.S. 459, 470, 20 S.Ct. 701, 706, 44 L.Ed. 846; Carter v. Forrestal, 1949, 85 U.S.App.D.C. 53, 175 F.2d 364; United States v. Obermeier, 2 Cir., 1950, 186 F.2d 243. The burden is on the one attacking the regulation to show its invalidity. Maryland Casualty Co. v. United States, 1920, 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297; Montana Eastern Limited v. United States, 9 Cir., 1938, 95 F.2d 897; United States v. Obermeier, supra.

■ Appellant has shown that the language of the 1917 and 1921 Manuals for Courts Martial was not incorporated into Article 57(b), but this is far from sufficient to sustain his burden of establishing that Army Regulation 633–30 is "plainly and palpably inconsistent" with the statute. At best appellant has demonstrated a change in the procedure adopted in requiring prisoners to serve full and independent sentences. As shown earlier, military law has always required sentences to be served independently. United States v. Keith, supra. This independent service had been accomplished by consecutive sentencing under the 1917 and 1921 Manuals for Courts Martial.

However, even before the enactment of the Uniform Code in 1951, this procedure was altered in favor of "interrupted" sentences. See Army Regulation 600–340 (May 22, 1951). Thus, the policy requiring service of each sentence independently was preserved, while the procedure used to accomplish this was changed by permitting the second sentence to interrupt the first until fully served, whence the unexecuted portion of the first would again be resumed. This of course is the same procedure embodied in Army Regulation 633–30.

That this procedure is plainly consistent with the statute is evidenced by the fact that Article 57(b) requires that a military sentence "shall begin to run from the date the sentence is adjudged," and this mandate could only be complied with in the present situation, where the defendant is already serving a prior sentence, by interruption of the first sentence. Further, subdivision (b) recognizes the interruption of a sentence by requiring that "periods during which the sentence to confinement is suspended shall be excluded in computing the service of the term of confinement."

■ Appellant cites Article 14(b) of the Uniform Code (10 U.S.C.A. § 814) in support of his argument. That section provides that whenever a military prisoner undergoing a court-martial sentence is delivered under appropriate Army regulations to a civil tribunal and is thereafter convicted, the delivery " * * * interrupts the execution of the sentence of the court-martial, and the offender after having answered to the civil authorities for his offense shall * * * be returned to military custody for the completion of his sentence." Appellant contends that if this procedure were intended to apply to successive military sentences, Congress would have expressly done so by a provision similar to Article 14 (b).

This argument disregards the above-stated historical differences between the construction given multiple sentences by military as distinguished from civil tribunals. Where a military prisoner had been sentenced by a civil tribunal, Congress deemed it necessary to interrupt the military sentence while the civil sentence was being served, thus avoiding any conflict with the concurrent sentencing of civil courts and preserving intact independent military sentencing. This provision, in fact, had been enacted by Congress in Article 74 of the Articles of War (former Chapter 36, Title 10, U.S.C.A. § 1546, Articles of War, June 4, 1920, 41 Stat. 803), and the same basic provision was re-enacted in Article 14(b) of the Uniform Code.

On the other hand, there was no such prior statutory enactment regarding successive military sentences, but there was a consistent policy of independent sentences which were served at first consecutively and then later by interruption. We do not think it was necessary to codify this established practice in military sentencing where no conflict could arise with civil tribunals, and the fact that Congress has provided for interrupted military sentences where civil sentences are imposed only serves to illustrate a favorable attitude and tacit approval of that practice in military tribunals.

Judgment affirmed.