UNITED STATES, Appellee

v.

CARMEN A. DeCARLO, Private First Class, U. S. Army, Appellant

1 USCMA 91, 1 CMR 90

No. 32

Decided December 28, 1951

LT. COL. James C. Hamilton, U. S. Army, for Appellant.

MAJOR Augustus A. Marchetti, U. S. Army, for Appellee.

ROBERT E. QUINN, Chief Judge:

This case is here on petition for grant of review, granted by the Court limited to specific issues. Petitioner, Private First Class Carmen A. De-Carlo, USA, was convicted by general court-martial on May 15, 1951, of unpremeditated murder of a Korean national, Pae Kaiwun, in violation of Article of War 92, and was sentenced to a dishonorable discharge, total forfeiture of pay, and confinement at hard labor for twenty-five years. The convening authority and the Army board of review have approved the findings and sentence. We granted review directed to the following issues: (1) the sufficiency of the evidence to sustain the finding of guilty of unpremeditated murder; and (2) the admissibility of an alleged dying declaration uttered by Pae Kaiwun, decedent.

Since the issues before the Court relate to the proof, it will be necessary to set out the facts in some detail. At about 1215 on March 28, 1951, petitioner's unit was preparing to entruck prior to moving to a new location in Korea. Pae Kaiwun, a Korean national boy employed in service and supply, was sitting on the top of a trailer attached to one of the trucks. The Korean boy had, in the past, dispensed candy to the troops when available. Petitioner asked the boy for candy several times. The boy said he had none. All witnesses to the incident testified that what ensued was a good-natured argument in bantering words with no serious overtones. While talking to the boy, petitioner had his right foot resting on the tongue of the trailer and his carbine resting on his knee, pointed in the direction of Pae Kaiwun. Petitioner then said to the boy, "If you don't give me some candy, I'll shoot you" or words to that effect. At this time, observers heard the click of a safety catch being released. The boy answered, "I don't care if you shoot, I have no candy." The carbine then fired and the Korean boy, fatally wounded, fell off the trailer. One of the witnesses saw petitioner place his finger in the trigger guard to release the safety but no one saw him pull the trigger. The boy died several hours later. Shortly after the shooting, the decedent stated that he was going to die, and when asked how it happened replied that it was an accident. Upon motion by the prosecution, this testimony was stricken from the record.

It is argued that the statement made by the Korean boy shortly before his death to the effect that the shooting was accidental was admissible as a dying declaration. The authorities are uniform in defining, if not in applying, the basic rule relative to the admissibility of such statements. Dying declarations are admissible when they constitute statements made by a person after a mortal wound has been inflicted, under a belief that death is certain, stating the facts concerning the cause of, and the circumstances surrounding, the homicide. It is clear that the deceased here was in extremis at the time he made the statement and that he was aware of the imminence of death. His statement was clearly a dying declaration. It is, however, contended that, to be admissible, the statement must be such as would be competent were the declarant testifying as a witness on the stand, and that statements amounting to an expression of an opinion or conclusion would not therefore be admissible. We note that although some authorities oppose this view—Wigmore, Evidence, section 1447—it is accepted in most jurisdictions, including the federal courts, and has been expressly adopted by the Manual:

"But only those declarations are admissible that would be admitted if the party were himself a witness; thus, irrelevant and immaterial remarks and statements of opinion as distinguished from facts cannot be received." MCM 1949, par. 179 (a).

The rule seems clear, but even a cursory examination of the cases reveals that experienced jurists have difficulty in applying it. Almost every con-

clusion of fact is, in essence, an opinion, resulting from a mental process based on personal observation. After reading the decisions in some detail, we are inclined to the view of Judge Learned Hand:

"No rule is subject to greater abuse. It is frequently an obstacle to any intelligible account of what happens. I know of none more baffling to a witness. Whatever its logical justification, it is the most annoying rule in its application that I know." Lectures on Legal Topics, N. Y. 1926, p. 97.

The application of the rule becomes even more difficult when the question concerns statements contained in a dying declaration. Since the declarant is deceased, it is impossible to obtain any more detailed statement of fact from him. His conclusions, where proper, are indispensable. Where the circumstances upon which the statement of the deceased is based are before the court, it is possible to guard against inferences based upon conjecture or collateral fact. The impulse toward truth provided by knowledge of impending death balances the absence of the protection against falsehood usually provided by cross-examination. An excellent expression of this view may be found in Pippin v. Commonwealth, 117 Va 919, 86 SE 152. The court, in deciding that a dying declaration to the effect that a shooting was not accidental but intentional was admissible in evidence, stated:

"The declarant was dying from shock and hemorrhage, and his physical condition was such that he could not give a detailed narrative of the constituent circumstances surrounding the shooting. Still the conclusion of fact drawn, perchance, from inexplicable phenomena, the expression on the countenance of the accused, the glance of his eye, or the motion of his hand, silent witnesses to an undeclared purpose, left the indelible impression on the mind of the dying man that the shooting was intentional and not accidental. We are of the opinion that the doctrine of reason and also the decisions of the best-considered cases is that the statement of the declarant that the shooting was intentional was admissible evidence." 86 SE at 155.

If the statement in question is conjecture only, or an inference based on collateral facts, then it should certainly be excluded. But where the statement is based on facts properly before the court, and where it constitutes but a shorthand summary of circumstances known to the declarant, it is, in our view, admissible in evidence. Applying this test to the case before us, it is clear that this Korean boy had the most intimate knowledge of the circumstances surrounding his death. He was engaged in conversation with the accused, watched his every action, and may well have observed a slip or motion which might have caused the accidental discharge of the carbine. The testimony of other witnesses establishes that his conclusion was not an improbable one. In the face of impending death, he would have no reason to tell an untruth. His testimony, although certainly not conclusive, should have been before the court to assist them in evaluating what was a difficult question of fact. The evidence was ambiguous, and this testimony would have lent some weight to a possible conclusion that the shooting was accidental.

In Stewart v. Commonwealth, 235 Ky 670, 32 SW2d 29, the statement by deceased that the killing was accidental was held to be admissible as a collective statement of fact based on known circumstances. To the same effect are Brock v. Commonwealth, 92 Ky 183, 17 SW 337; Allen v. Commonwealth, 134 Ky 110, 119 SW 795; Commonwealth v. Matthews, 89 Ky 287, 12 SW 333; State v. Mace, 118 NC 1244, 24 SE 798; State v. Kuhn, 117 Iowa 216, 90 NW 733; Autry v. State, 143 Tex Cr Rep 252, 157 SW2d 925. These cases support directly the conclusion we reach here.

The Supreme Court has dealt with the issue here involved in Shepard v. United States, 290 US 96, 78 L ed 196, 54 S Ct 22. Although holding that the statement, "Dr. Shepard poisoned me" was inadmissible ·because it was not shown that the declarant believed death to be impending, the Court went on to say (p 101):

"To let the declaration in, the inference must be permissible that there was knowledge or the opportunity for knowledge as to the acts that are declared. . . . The form is not decisive, though it be that of a conclusion, a statement of the result with the antecedent steps omitted. . . . One does not hold the dying to the observance of all the niceties of speech to which conformity is exacted from a witness on the stand. What is decisive is something deeper and more fundamental than any difference of form. The declaration is kept out if the setting of the occasion satisfies the judge, or in reason ought to satisfy him, that the speaker is giving expression to suspicion or conjecture, and not to known facts. The difficulty is not so much in respect of the governing principle as in its application to varying and equivocal conditions."

In conclusion, then, we hold that the statement of Pae Kaiwun here was not simply conjecture. As a collective statement of fact, based on his own observations, it was admissible as not violative of the opinion rule.

The board of review concluded in this case that even if the declaration in question was legally admissible, its exclusion was not substantially prejudicial to the accused. ▇ We do not agree. As already noted, there is considerable doubt whether the facts as proven amount to a showing of unpremeditated murder. The admission in evidence of Pae Kaiwun's statement, touching as it does the very crux of the issue before the court, might well have materially affected the findings. We note that civilian courts have consistently reversed criminal convictions where similar dying declarations were excluded at the trial. Stewart v. Commonwealth, supra; Brock v. Commonwealth, supra; Justice v. Commonwealth, 269 Ky 846, 108 SW2d 1011. We find no decisions holding to the contrary.

Taking this view on the first issue considered, it becomes unnecessary for us to decide whether, as a matter of law, there is sufficient evidence to prove unpremeditated murder. The exclusion of the dying declaration of Pae Kaiwun was prejudicial error, and the accused is entitled to a rehearing. Accordingly, the case is reversed and remanded to the Judge Advocate General of the Army for action not inconsistent with this opinion.

Judges LATIMER and BROSMAN concur.