UNITED STATES, Appellee

v.

OLLIE C. WILLIAMS, Private First Class, U. S. Army, Appellant

1 USCMA 231, 2 CMR 137

No. 251

Decided March 14, 1952

LT. COL. George M. Thorpe, USA, and 1ST LT. Benjamin Feld, USA, for Appellant.

231

Lt. Col. Thayer Chapman, USA, and 1st Lt. Eugene L. Grimm, USA, for Appellee.

## Opinion of the Court

George W. Latimer, Judge:

Petitioner was tried by general court-martial on July 11, 1951, for violation of Article 134, Uniform Code of Military Justice, 50 USC § 728. The two specifications under the charge alleged assault with intent to commit murder upon (1) First Lieutenant Richard C. Rock, and (2) Corporal Freddie Phillips, Jr. He pleaded not guilty to the charge and specifications, and was found guilty of the charge and specification (1), and not guilty of specification (2). The court-martial sentenced him to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for fifteen years. The findings and sentence were approved by the convening authority, and the board of review in the office of The Judge Advocate General of the Army affirmed. The petition to this Court for a review of the record of his conviction was granted, the review being limited to the issue of whether the failure of the law officer to instruct the members of the court as to the elements of the offenses charged was prejudicial to the petitioner.

Petitioner was a member of Headquarters Company, 3rd Battalion, 9th Infantry Regiment, serving at Inje, Korea. On the morning of June 15th or 16th, 1951, he complained of a serious headache and, after receiving an aspirin from the medical aid station of the company, was sent back to duty. At that time he was sober, and appeared perfectly free from any mental disorder. Later, when the company was ordered into formation, Corporal Phillips saw petitioner leave the area, proceed up the side of a hill, and enter a trench near the command post tent. Phillips pursued petitioner, and while doing so heard a shot. He looked up and saw petitioner in the trench about 175 to 200 yards away, holding an M-1 rifle. The rifle was at the shoulder of petitioner, and was pointed at Phillips. Phillips returned to the orderly tent

and spoke to Lieutenant Rock, the company commander, and Sergeant Myers. Lieutenant Rock, Sergeant Myers, and Corporal Phillips started across the company area towards the hill where petitioner was hiding, and proceeded towards his position. When the group was approximately 175 to 200 yards away from the petitioner's position, shots were again heard. Lieutenant Rock observed petitioner standing up in the trench, holding the weapon about waist high. Petitioner fired one round, and the lieutenant and his two companions, after a warning shout, dropped to the ground. The group shouted to petitioner to come down, but he again fired in their general direction. One of the rounds struck about twenty feet from Lieutenant Rock and three rounds struck the ground about sixteen inches from Sergeant Myers.

After the shots were fired, Lieutenant Rock ordered a squad of men to move around the base of the hill, come up behind the petitioner, and attempt to capture him. Before the squad accomplished this assignment, the petitioner left his position and went over the top of the hill. After a search of about twenty minutes, the accused made himself known, and Lieutenant Rock observed him on a nearby hill, standing with his rifle at his side. The lieutenant ordered him to come forward and surrender his rifle, and the order was obeyed. At that time, and later when he was brought to the aid station, the petitioner appeared rational, sober and showed no excitement. However, a subsequent mental examination was made.

Petitioner was sworn as a witness in his own behalf and testified that he entered the Army on the 20th day of October, 1950; that he had been a rifleman of the company for approximately a week before the incident; that he went to the position to be by himself; that, while he remembered firing one shot, he did not remember having again fired the weapon; that he was not shooting at or trying to hit anybody; and

that he had never been in trouble with Lieutenant Rock or Corporal Phillips.

The specification of the offense of which petitioner was convicted reads as follows:

"In that Private First Class Ollie C. Williams, . . . did, at Inje, Korea, on or about 15 June 1951, with intent to commit murder, commit an assault upon First Lieutenant Richard C. Rock by shooting at him with a rifle."

The law officer, in instructing the members of the court-martial as to the elements of the offense, stated as follows:

"Court is advised that the elements of the offense are as follows:

"That the accused assaulted certain persons as alleged; the facts and circumstances showing the existence at the time of the assault of the intent of the accused to commit murder as alleged."

This instruction was followed by the form instructions on reasonable doubt, burden of proof, and presumption of innocence. Unfortunately, the law officer failed to mention or instruct on any included offenses.

While we do not reverse this case on the inadequacy of the instruction on the principal offense, because we reserve for future determination the failure to except or to request clarifying instructions we call attention to the lack of information given to the court-martial members. Apparently, law officers have not given due consideration to defining the crime accurately. Too much attention is being placed on the wording of the Manual to the effect that the instruction may be given in the language of the applicable subparagraph. That requirement is permissive, and in certain instances the contents may be adequate to present fairly the material issues. However, there are offenses which are not sufficiently defined and the elements must be obtained from the punitive article or from some other sources. The "Discussion" and "Proof" contained in the Manual quite often make general statements in reference to the crime, without specifically pointing out the particular and necessary elements, and in many instances the remarks include statements which are not fitted to the issue involved. Some discrimination is required to extract from both the "Discussion" and "Proof" the essential elements of the offense or offenses shown by the evidence, and law officers should make certain that those necessary to a proper definition of the crimes are called to the attention of the courts-martial members.

In the particular instruction given in this case the law officer referred to an assault with intent to commit murder, but he went no further. It may be that the specification disclosed enough to inform the court of the elements of assault, but there was nothing in the specification or the instruction which in any way defined the crime of murder. The latter is a particularly difficult crime to outline and the differences in degrees between murder and manslaughter are sometimes indefinite and difficult to determine. If the accused were charged with murder, no one would contend that all the elements of that crime should not be mentioned. But, too often, the necessity to give the same information is overlooked when the crime is used as a predicate for an assault. It would appear to be most difficult for members of a court-martial to determine whether or not an accused intended to commit murder without knowing what elements bring into existence that state of mind. Accordingly, we believe it necessary and advisable when the crime charged is an assault with a specific intent to commit an aggravated offense that the latter offense be properly defined.

In the case of United States v. Clark, (No. 190), 1 USCMA 201, 2 CMR 107, decided February 29, 1952, we stated the principle that the court must instruct on included offenses in the following language:

"Correct procedure under military law required that, unless the evidence excludes any reasonable inference that a lesser crime was committed, the duty of the law officer is to carve out instructions covering the offense.

**233**

He is the judge in the military system and he must furnish the court the legal framework of all offenses which the evidence tends to establish. Unless he does so the accused has been denied a right which we conclude was granted by Congress and error as a matter of law follows."

Because of the ruling announced in that case, we are required to reverse the conviction in this instance. The basic charge ▮ was assault with intent to commit murder under Article 134, Uniform Code of Military Justice, supra. This is the most serious degree of assault, and carries a penalty of confinement at hard labor up to twenty years. There are other aggravated assaults provided for under Article 128 of the Code, (50 USC § 722) which carry lesser penalties, and the Manual for Courts-Martial, 1951, in Appendix 12, sets forth a table of the commonly included offenses. Referring to page 540 of the Manual, the principal offense under Article 134, (assault with intent to commit murder), is shown to include necessarily assault and aggravated assault under Article 128, and assault with intent to commit voluntary manslaughter under Article 134. The prejudicial error in this case comes from a failure to instruct on one of those included offenses.

By a process of factual elimination we can narrow the question to the included offense which we believe is within the evidence and issues. The facts do not show any heat of passion brought about by provocation. The record is barren of any evidence which would bring about resentment, excitement, anger or loss of reason in an ordinary man. Moreover, the evidence fails to suggest any other reason for saying that the accused assaulted with intent to commit voluntary manslaughter. The general rule is that the felonious act must be done under such circumstances that, had death ensued, the offense would have been voluntary manslaughter. Had death ensued in this instance the crime would have been murder, not manslaughter. This would eliminate the necessity of the law officer having to instruct on assault with intent to commit manslaughter.

There are two aggravated assaults listed under Article 128. One is defined under subsection (b)(2) as

"Any person subject to this code who commits an assault and intentionally inflicts grievous bodily harm with or without a weapon; is guilty of aggravated assault and shall be punished as a court-martial may direct."

Error for failure to instruct on this offense can be eliminated from further consideration for the reason that it requires the infliction of grievous bodily harm and no one was injured by the firing of the weapon.

Likewise we find no error in the failure to instruct on simple assault.

The firing of the rifle at the lieutenant was an act inherently dangerous or one apt to kill or do great bodily injury, and that act placed the offense on the level of the aggravated type. There was no evidence upon which any suggestion of simple assault could be made and that offense was not fairly open for consideration.

A different situation is presented in connection with failure to instruct on an assault with a dangerous weapon. Article 128(b)(1) provides as follows:

"Any person subject to this code who commits an assault with a dangerous weapon or other means of force likely to produce death or grievous bodily harm; is guilty of an aggravated assault. . . ."

A short reference to the testimony will show that the evidence is sufficient to require an instruction on that offense. There was no direct evidence as to the specific intent of the petitioner. From his acts and conduct the court could reasonably infer he may have intended to kill; but, according to his own testimony he had no such intent. If the court was to believe his testimony then the specific intent to kill was to present and the assault would amount to no more than an aggravated assault under the above-quoted article. This statement by the accused put in issue

the specific intent; and, while it may be unreasonable to believe his testimony —a question we need not answer—it would at least make an issue to be considered by the court-martial under proper instructions. Under our previous holdings, the failure to instruct on this offense was error.

The evidence in the case requires us to hold that the error was prejudicial. As previously suggested, the intent to kill in this case must be inferred from the facts and circumstances and the use of a deadly weapon. There is no direct testimony of malice, hatred, ill will or strained relationship. There appears to have been no motive for the petitioner to kill and he specifically denied any such intent. It is difficult for this Court, and it must have been equally difficult for the court-martial, to determine the reason for petitioner's peculiar misbehavior. There must have been some uncertainty in the minds of the members of the court-martial as the first round was fired at Corporal Phillips and yet a finding of not guilty was returned on the specification which charged an assault with intent to kill him. From the testimony the members of the court could have inferred that the petitioner intended to kill, to do serious bodily harm, or to frighten the company personnel away so that he would be left unmolested. Faced with only a meagre outline, the members of the court found the intent to kill, but they were left with no other alternative, save to find the accused not guilty on both specifications. Obviously, they would be reluctant to do that. We conclude the facts and circumstances would permit reasonable men to find that the accused did not have the requisite intent to kill. If so, the offense would be no more than an assault with a dangerous weapon, which carries a maximum punishment of confinement for five years. Not having been told that there was a crime less serious than the one charged which might be considered within the evidence, the court-martial would not be inclined to deliberate on the possibility of returning a verdict other than the one it did.

The holding of the board of review is reversed and the case returned to The Judge Advocate General of the Army for action consistent with the views expressed herein.

Chief Judge QUINN and Judge BROSMAN concur.