UNITED STATES, Appellee

v.

CHARLES G. DREW, Private, U. S. Air Force, Appellant

1 USCMA 471, 4 CMR 63

No. 422

Decided July 23, 1952

Col. Kenneth B. Chase, USAF, and Lt. Col. William H. Ward, Jr., USAF, for Appellant.

Col. Wendell C. Dreier, USAF, and Capt. William E. Shannon, USAF, for Appellee.

### Opinion of the Court

Robert E. Quinn, Chief Judge:

Petitioner was tried and convicted by Air Force general court-martial of assault with intent to commit voluntary manslaughter, in violation of Article of War 93, 10 USC § 1565. He was sentenced on June 14, 1951, to dishonorable discharge, total forfeiture of pay and confinement for ten years. The convening authority approved, but reduced the confinement to five years. The Air Force board of review directed that the forfeitures of pay would be effective only after the date of the order executing the sentence, but otherwise affirmed. We granted petition for review directed to the issue of whether the failure of the law officer to instruct as to the elements of lesser included offenses constituted prejudicial error.

As already noted, petitioner was charged with and convicted of assault with intent to commit voluntary manslaughter. This offense is defined in Paragraph 180k of the Manual for Courts-Martial, U. S. Army, 1949, as follows:

> "This offense differs from assault with intent to murder in the lack of the element of malice necessary to constitute the latter crime. It is an assault in an attempt to take human life in a sudden heat of passion caused by provocation. The specific intent to kill is necessary, and the act must be done under such circumstances that, had death ensued, the offense would have been voluntary manslaughter. There can be no assault with intent to commit involuntary manslaughter."

At the conclusion of this paragraph, which also discusses other assaults with intent to commit a felony, the "elements" of proof are set out as follows:

"Proof.—(a) That the accused assaulted a certain person, as alleged; and (b) facts and circumstances indicating the existence at the time of the assault of the specific intent of the accused to murder, or to commit manslaughter, rape, robbery, sodomy, or another felony as alleged."

Here, the law officer instructed the court in the following language:

"The court is advised that the elements of the offense are as follows:

(a) that the accused assaulted a certain person as alleged, and

(b) facts and circumstances indicating the existence at the time of the assault of the specific intent of the accused to commit manslaughter as alleged."

We have already set out, in detail, the standard which we have derived from Article 51(c) of the Uniform Code of Military Justice, 50 USC § 626, in relation to instructions. The law officer must instruct on the elements of the offense charged. United States v. Clay (No. 49), 1 USCMA 74, 1 CMR 74, decided November 27, 1951. The instructions must be complete, clear, simple, and unambiguous. United States v. Rhoden (No. 153), 1 USCMA 93, 2 CMR 99, decided February 26, 1952; United States v. Gilbertson (No. 318), 1 USCMA 465, 4 CMR 57, decided July 22, 1952. The instructions must include a definition of such lesser included offenses as constitute, under the evidence, reasonable alternatives to the specific offense charged. United States v. Clark (No. 190), 1 USCMA 201, 2 CMR 107, decided February 29, 1952; United States v. Roman (No. 191), 1 USCMA 244, 2 CMR 150, decided March 19, 1952. Finally, the instructions must include a statement of the law relative to certain affirmative defenses where such defenses are properly raised by the evidence. United States v. Ginn (No. 263), 1 USCMA 453, 4 CMR 45, decided July 10, 1952.

Evaluation of the instructions in this case requires that first we set out the evidence of record. Petitioner and Corporal Joseph E. Robinson were members of the 3615th Food Service Squadron and lived in the same room in Barracks T-15, Craig Air Force Base, Alabama. On the morning of April 13, 1951, when Robinson opened his dresser drawer to get his clothing, he discovered that an old Class A pass which he kept in the drawer was missing. He then went downstairs to the latrine and, while he was there, petitioner came in. Petitioner appeared to be drunk. After both had returned to their room, Robinson asked petitioner if he had taken the pass. At first petitioner denied it, but when questioned again, he stated that he had it. He told Robinson that if he wanted it he "would have to take it." A brief scuffle between the two airmen ensued in which petitioner was thrown and held on a bed by Robinson and petitioner kicked Robinson in the groin. The fight ended when Robinson left the room in a state of anger. As he started down the stairs, petitioner threw a chair at him. Robinson left the building and went to the squadron orderly room where he read the bulletin board. He then walked back around the corner of the building, where he was confronted by petitioner. The latter displayed a hatchet. Saying, "You turned me in, huh?", petitioner swung at Robinson with the hatchet. He missed, but swung a second time and struck Robinson on the head with a glancing blow. The blow stunned Robinson, who staggered but did not fall. Petitioner then turned and ran, dropping the hatchet as he fled. Several persons were in the vicinity, and two of them assisted Robinson. Petitioner himself returned and accompanied Robinson to the hospital.

Robinson, who was the principal prosecution witness, testified that petitioner appeared to be drunk before the incident. This was corroborated by another prosecution witness who testified as to petitioner's apparent state of intoxication during and after the incident. These observations were based on petitioner's speech, appear-

**473**

ance, muscular control, manner of walking, and deviations from his normal conduct. This proof of intoxication was emphasized by defense counsel in his closing argument.

We have already held, in accordance with the majority rule obtaining in the United States, that voluntary intoxication may be legally considered as affecting mental capacity to entertain a specific intent. United States v. Roman, supra; Manual for Courts-Martial, U. S. Army, 1949, Paragraph 140a. Assault with intent to commit voluntary manslaughter requires, by definition, a specific intent. Manual for Courts-Martial, U. S. Army, 1949, Paragraph 180k, supra. There was here considerable evidence of intoxication. It matters not that this evidence is insufficient to require setting aside the finding of guilty. It is enough that, reasonably considered, it would have allowed the court-martial to find petitioner guilty of a lesser offense not requiring the element of specific intent, such as assault with a dangerous weapon in violation of Article of War 96, 10 USC § 1568. The law officer failed, however, to instruct the court on the effect of intoxication in relation to the crime charged and upon the possibility of findings on lesser included offenses.

Even without the proof of intoxication, the evidence here would support a finding of assault with intent to do bodily harm with a dangerous weapon. See Manual for Courts-Martial, U. S. Army, 1949, Paragraph 180l. The punishment for this offense includes five years' confinement, whereas the maximum is ten years for the offense of assault with intent to commit voluntary manslaughter. The line is closely drawn between an intent to commit great bodily harm and an intent to commit voluntary manslaughter. Under the evidence of this case, this lesser offense should have been submitted to the court.

Although it is not specifically included within the issue granted, we think it appropriate here to note the failure of the law officer to provide the court with a definition of voluntary manslaughter. The most important element of the offense with which petitioner was charged is the specific intent alleged. It is just as vital in a case involving assault with intent to commit voluntary manslaughter that the court know the elements of voluntary manslaughter as it is when the latter crime itself is charged. Otherwise, the court has no standard against which to measure the evidence of intent produced at the trial.

The failure of the law officer to define voluntary manslaughter, to indicate the legal effect of proof of intoxication, and to define the applicable lesser included offenses raised as alternatives by the evidence constitutes error. It is not for us to determine precisely what the court would have found had it been correctly instructed. Considering the evidence, there is a reasonable possibility that, had full and correct instructions been given, the court would have found petitioner guilty of a lesser offense. This is sufficient reason upon which to base a finding of prejudice. The decision of the board of review is reversed and a rehearing is ordered.

Judges LATIMER and BROSMAN concur.