UNITED STATES, Appellee

v.

ROSS BANKS, Private, U. S. Army, Appellant

1 USCMA 479, 4 CMR 71

No. 382

Decided July 24, 1952

LT. COL. George E. Mickel, USA, and 1ST LT. John D. Calamari, USA, for Appellant.

LT. COL. Paul J. Leahy, USA, and 1ST LT. Richard L. Brown, USA, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Petitioner was convicted by general court-martial on September 14, 1951, of one offense of assault with intent to murder and one offense of assault with a dangerous weapon. He was sentenced to dishonorable discharge, total forfeiture of pay, and confinement for ten years. Army reviewing authorities have upheld the findings and sentence. We granted petition for review, limited to the issue of whether the failure of the law officer to instruct as to any lesser included offenses under the charge of assault with intent to murder constituted prejudicial error.

The facts are as follows. At about 3:00 p.m. on July 29, 1951, Corporal James S. Holmes and Private David Manney, having just returned from "carrying chow up front," were engaged in conversation in their unit mess tent near Munsan-ni, Korea. Petitioner approached, talking in a loud and vulgar manner. Holmes told him "not to talk so loud; to talk a little lower" and petitioner replied, "No . . . is going to tell me how to talk." "I will kill any . . . that tries to mess with me or . . . with me." Petitioner thereupon pushed Holmes, who pushed him back. Petitioner then drew a knife equipped with a six-inch blade and, when Holmes threw up his hands to protect his face, petitioner slashed his hands. Holmes retreated and, when petitioner continued to move toward him with the knife, Holmes picked up an egg-beater and threw it at Banks. Holmes then

fled, running in a zig-zagging manner, with petitioner in pursuit. They ran past the water trailer and down by the mess hall. Petitioner turned around, ran back to the mess hall, picked up a carbine lying on a bunk outside the mess hall, and fired three or four rounds from the hip toward Holmes without hitting him. Petitioner elected to testify under oath and in so doing disclaimed any recollection of the foregoing incident.

It is urged by defense that this evidence required an instruction by the law officer on the elements of the lesser included offense of assault with intent to commit voluntary manslaughter. United States v. Clark, (No. 190), 1 USCMA 201, 2 CMR 107, decided February 29, 1952; United States v. Roman, (No. 191), 1 USCMA 244, 2 CMR 150, decided March 19, 1952; United States v. Drew, (No. 422), 1 USCMA 471, 4 CMR 63, decided July 23, 1952, are relied on in support of this contention. The test to be derived from these decisions in regard to the necessity of instructions on lesser offenses is whether the lesser offense constitutes, under the evidence, a "reasonable alternative" to the offense charged.

Applying the standard to the facts of this case, we think that the law officer was justified in not submitting the offense of assault with intent to commit voluntary manslaughter to the court. To constitute that crime, the acts in question must have been done under such circumstances that, had death en-

sued, the offense would have been voluntary manslaughter. Voluntary manslaughter requires that the killing be committed "in the heat of sudden passion caused by adequate provocation. . . . . The provocation must be such as the law deems adequate to excite uncontrollable passion in the mind of a reasonable man, and the act of killing must be committed under and because of the passion. The provocation must not be sought or induced as an excuse for killing or doing harm." Manual for Courts-Martial, United States, 1951, paragraph 198a, pages 353–354.

Guided by the foregoing principles, it is apparent that the evidence in the instant case does not indicate that had death resulted from petitioner's assault, the offense would have been voluntary manslaughter. In the first place, petitioner was the aggressor throughout the encounter. He then used Holmes' natural reactions as an excuse for his subsequent felonious assaults. Holmes' admonition to petitioner to talk lower could not, under the provisions of the Manual, cited supra, constitute provocation. Finally, the purely defensive actions of Holmes can hardly be considered any provocation for petitioner's felonious assault with both knife and carbine. We conclude that there was no necessity for an instruction on assault with intent to commit voluntary manslaughter. The evidence affords no reasonable basis for any other lesser offense.

We note, however, that in instructing the court on the elements of the offense charged, the law officer defined assault but failed to set out the elements of murder. On March 14, 1952, a date subsequent to the order granting the petition in this case, United States v. Williams, (No. 251), 1 USCMA 231, 2 CMR 137, was decided by this Court. In that case also, the accused was charged with assault with intent to murder and the law officer did not provide the elements of murder in his instructions. The Court had this to say concerning the instructions:

"... Apparently, law officers have not given due consideration to

defining the crime accurately. Too much attention is being placed on the wording of the Manual to the effect that the instruction may be given in the language of the applicable subparagraph. That requirement is permissive, and in certain instances the contents may be adequate to present fairly the material issues. However, there are offenses which are not sufficiently defined and the elements must be obtained from the punitive article or from some other sources. The 'Discussion' and 'Proof' contained in the Manual quite often make general statements in reference to the crime, without specifically pointing out the particular and necessary elements, and in many instances the remarks include statements which are not fitted to the issue involved. Some discretion is required to extract from both the 'Discussion' and 'Proof' the essential elements of the offense or offenses shown by the evidence, and law officers should make certain that those necessary to a proper definition of the crimes are called to the attention of the courts-martial members.

"In the particular instruction given in this case the law officer referred to an assault with intent to commit murder, but he went no further. It may be that the specification disclosed enough to inform the court of the elements of assault, but there was nothing in the specification or the instruction which in any way defined the crime of murder. The latter is a particularly difficult crime to outline and the differences in degrees between murder and manslaughter are sometimes indefinite and difficult to determine. If the accused were charged with murder, no one would contend that all the elements of that crime should not be mentioned. But, too often, the necessity to give the same information is overlooked when the crime is used as a predicate for an assault. It would appear to be most difficult for members of a court-martial to determine whether or not an accused intended to commit murder without knowing what elements bring into existence that state of mind.

**481**

Accordingly, we believe it necessary and advisable when the crime charged is an assault with a specific intent to commit an aggravated offense that the latter offense be properly defined."

In United States v. Drew, supra, we held that it was error to not define voluntary manslaughter where the charge was assault with intent to commit voluntary manslaughter. The reasoning followed in Williams and Drew, supra, is applicable here. The specific intent to murder was the material element of the crime charged. It is just as important, therefore, that the Court here have before it the elements of murder as in the case where that offense itself is charged. It follows that the instruc-tions of the law officer were inadequate and, as we have stated in previous cases, this requires reversal of the finding to which the instructions relate. See United States v. Rhoden, (No. 153), 1 USCMA 193, 2 CMR 99, decided February 26, 1952; United States v. Gilbertson, (No. 318), 1 USCMA 465, 4 CMR 57, decided July 22, 1952. The decision of the board of review is reversed and the case is remanded to The Judge Advocate General for rehearing on the charge involving assault with intent to murder or for referral to a board of review for reconsideration of the sentence.

Judges LATIMER and BROSMAN concur.