UNITED STATES, Appellee

v

STEPHEN S. MARTIN, Seaman, U. S. Navy, Appellant

16 USCMA 531, 37 CMR 151

No. 19,696

March 3, 1967

*Lieutenant Warren K. Morgens,* USNR, argued the cause for Appellant, Accused.

*Commander Walter F. Brown,* USN, argued the cause for Appellee, United States. With him on the brief was *Colonel J. E. Hanthorn,* USMC.

QUINN, Chief Judge:

Appellant stands convicted of desertion, in violation of Article 85, Uniform Code of Military Justice, 10 USC § 885. The question raised on this appeal concerns certain evidence admitted against him.

On May 21, 1964, the accused absented himself without authority from his ship, which was then in San Francisco, California. He surrendered to civilian authorities in Portland, Oregon, on June 28, 1965, and was turned over by them to a Navy Shore Patrol. Some days later, he was transferred to the United States Naval Supply Depot, Seattle, Washington, where he was confined "pending disciplinary action." The day after the accused's arrival, Chief Personnelman Schlumbaum talked to him. According to the Chief's stipulated testimony, he informed the accused he was suspected of desertion, and advised him of his right, under Article 31 of the Uniform Code, supra, 10 USC § 831, to make no statement about the offense. Apparently, he then gave the accused a mimeographed form which contained thirteen sets of questions dealing with circumstances of the absence. The questions were prefaced by a statement to the effect the accused was suspected of a violation of Article 85, and that he need not "answer any question concerning this offense or make any statement whatsoever." The statement further provided the accused "hereby freely and voluntarily" answered "the following questions." Nine of the thirteen sets of questions were answered. The four unanswered groups are as follows:

"5. Did you work during the time you were absent from your command? If so, for whom and in what type of work?

"6. What name did you use to identify yourself to your employer?

"7. Did your employer withhold social security and income taxes?

If so, in what name were these taxes withheld for you?

. . . . .

"9. Did you at any time during your absence use a name other than your own? If so, when and for what purpose?"

At trial, the accused entered a plea of not guilty to desertion, but guilty of unauthorized absence, in violation of Article 86, Code, supra, 10 USC § 886. Without objection by defense counsel, the prosecuting attorney introduced the questionnaire in its entirety. He also presented evidence indicating that the accused used certain assumed surnames during his absence. In his own behalf, the accused testified he never intended to remain away permanently. He said he absented himself without authority because he was greatly dispirited and had lost "faith" in himself and his associates; he wanted to be away from the service only while he tried to regain his confidence and stability. He admitted he had used different surnames during his absence, but he gave two reasons. His primary reason was that his regular surname was his stepfather's; he disliked him, and did not want to use his name while he was attempting to reestablish his faith in himself. He assumed a second surname for a position he obtained as a shoe salesman. This was a "short" name. He had learned that a short name was remembered by customers, and he could, therefore, get a good "return business."

Trial counsel attached a great deal of importance to the accused's use of assumed names. He introduced such evidence as part of his direct case and he argued its significance in his final arguments to the court members. The pertinent parts of his arguments are as follows:

". . . There is evidence of an assumed name, of the regular use of an assumed name; and it is the government's position that the explanation of the use of that name,

while it is of certain face validity, accounts no more persuasively than the concealing of identity to avoid apprehension during the absence, which would be another explanation for the serial and regular use of that assumed name while an unauthorized absentee. The distance of Portland from the ship is another thing relevant to the court's deliberation in relation to the intent to desert. The accused, who there is evidence, had a wife in Southern California, did not remain in Southern California for the period of his absence, but instead took himself to the State of Oregon, still under an assumed name, and found employment."

Trial counsel also asked the court "to look with particular care" at the questionnaire which was executed "shortly after . . . [the accused's] return to naval jurisdiction after this 400-day absence." The record indicates the questionnaire was taken by the court members into the closed session deliberation on the findings.

This court has consistently held that evidence is inadmissible, and argument is improper, which ██ tends merely to indicate the accused declined to answer a question, or submit to a scientific test, in reliance upon his rights under Article 31 of the Uniform Code of Military Justice. United States v Jones, 16 USCMA 22, 36 CMR 178; United States v Russell, 15 USCMA 76, 35 CMR 48. The reason for the rule is simply this: The right to remain silent is protected by the Constitution of the United States and the Uniform Code of Military Justice; it is, therefore, impermissible to draw an inference of guilt or lack of honesty from reliance upon the right. Grunewald v United States, 353 US 391, 1 L ed 2d 931, 77 S Ct 963 (1957); United States v Kowert, 7 USCMA 678, 23 CMR 142. To avoid application of the rule here, Government counsel contend that the questions in issue could have been left unanswered by the accused for a reason, or rea-

sons, unrelated to his right to remain silent. See United States v Workman, 15 USCMA 228, 35 CMR 200. The questionnaire and the substance of the unanswered questions negative this contention. In light of the prefatory statement on the questionnaire, indicating the accused had the right not to "answer any question," the fact he answered some questions, and did not answer others, fairly suggests that, as to the latter, he relied upon his right to remain silent. We conclude, therefore, that the admission in evidence of the entire questionnaire, without masking or excising the unanswered questions, or giving an appropriate limiting instruction, was error. United States v Kowert, supra. However, the error does not necessarily require reversal of the accused's conviction.

An error of the kind involved here may have been waived by the defense at trial. United States v DeCarlo, 1 USCMA 91, 1 CMR 90. Also, the error may be disregarded on appeal because the record of trial demonstrates the absence of a fair risk of prejudice resulting from it. United States v Andrews, 16 USCMA 20, 36 CMR 176. Government counsel contend both circumstances are present in this case.

Since the accused pleaded guilty to the lesser offense of unauthorized absence, the only issue in regard to the offense charged was whether the accused intended to remain away permanently. It will be recalled that he testified he intended to stay away only until he regained a measure of faith in himself and in others; and, in fact, he voluntarily returned to military control. True, there is other evidence to support the court-martial's adverse determination as to his intent. It is quite clear, however, that the court-martial's determination was influenced by the unfavorable inference drawn from the accused's acknowledged use of assumed names. The accused gave innocent and plausible reasons for the adoption of these names, but trial counsel vigorously challenged the truthfulness of the tes-

timony, and made the use of assumed names a crucial fact from which the court-martial might infer an intent to remain away permanently. The matter, therefore, was presented to the court members in such terms as to make it manifest that application of the waiver rule would result in a miscarriage of justice. United States v Kowert, supra, page 682; United States v Jones, supra.

What we have said as to the significance of the evidence of assumed names is equally applicable to the question of the risk of prejudice. The accused's failure to answer the questions on that subject in the questionnaire could reasonably have led the court members to conclude he had no innocent explanation for the assumed names when he returned to military control, and, consequently, his trial testimony was a recent fabrication.

Fagundes v United States, 340 F2d 673 (CA 1st Cir) (1965). It is, therefore, apparent that the record of trial demonstrates, rather than excludes, a fair risk of prejudice from the error in the admission of the questionnaire.

The decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Navy for resubmission to the board of review. In its discretion, it may affirm findings of guilty of the lesser offense of unauthorized absence, in violation of Article 86, Uniform Code, supra, in accordance with the accused's plea of guilty, and reassess the sentence on the basis thereof, or it may direct a rehearing on the offense charged.

Judges FERGUSON and KILDAY concur.