UNITED STATES, Appellee

v

CHARLES BURGESS, Airman, U. S. Air Force, Appellant

21 USCMA 13, 44 CMR 67

No. 23,885

July 16, 1971

*Captain Robert L. Bridge* argued the cause for Appellant, Accused. With him on the brief were *Colonel Bertram Jacobson* and *Major Clarence E. Powell.*

*Lieutenant Colonel Robert W. Vayda* argued the cause for Appellee, United States. With him on the brief was *Colonel James M. Bumgarner.*

## Opinion of the Court

QUINN, Judge:

Arraigned on a charge of desertion before a general court-martial convened at Grand Forks Air Force Base, North Dakota, on July 20, 1970, the accused pleaded guilty to the lesser offense of unauthorized absence, but he was convicted as charged. On review, he alleged he was prejudiced by improper questions by a court member and improper comments by the military judge, which resulted in the admission of adverse evidence and compromised his right to remain silent. The United States Air Force Court of Military Review determined that some of the questions and comments were "injudicious and, in certain respects erroneous," but it concluded that nothing "incriminating or controversial" appeared which operated to the accused's disadvantage. The correctness of that conclusion is challenged on this appeal.

No oral testimony was presented by the Government. Its direct case consisted of an exhibit establishing the initial absence on November 17, 1969; a stipulation to the effect that the absence was terminated by apprehension on May 21, 1970, in the accused's familial community by West Virginia authorities and a Special Agent of the Federal Bureau of Investigation; a stipulation that on April 13, 1970, the Squadron Section Commander wrote to the accused's mother recommending that she "urge" the accused to return to military control; and a stipulation regarding the accused's testimony at

**13**

the Article 32 investigation, which had been held the previous month. In the last-mentioned stipulation, the accused indicated that he was granted leave before reporting to a new organization at Grand Forks Air Force Base. He did not report at the expiration of his leave because, in part, he was dissatisfied with the medical attention he had received for a back condition incurred on the "obstacle course" in basic training and which hurt him intermittently "pretty bad." He maintained that, throughout his absence, he intended to return to the service, and he had told his mother after she received the letter as to his absence that he "was going to turn" himself "in." He always kept his Air Force Identification Card in his wallet, and he took no regular jobs. He represented that persons in his home community knew he was an unauthorized absentee. Finally, he maintained that he wanted to stay in the Air Force, but he would like to "get something done for . . . [his] back," which "bothered" him.

The defense also presented no witnesses. Defense counsel rested with the remark that the "accused's sworn testimony as to relevant facts" was already before the court.

Considering the evidence and the accused's plea of guilty to unauthorized absence, it is plain that the crucial question was whether the accused possessed the intent to remain away permanently from his organization, as charged. After the judge instructed the court members on the issues and the law, one of the members expressed dissatisfaction with the evidence. While representing that he did not "question" trial counsel's "competency," he insisted that, since "we are trying to establish intent," he believed evidence as to the accused's age, schooling, the circumstances of his entry into the Air Force, and other matters had "a bearing" on the point. As a result of his efforts, various items of evidence were formally stipulated or discussed in such a way as to leave no doubt they were

to be considered by the members in their deliberations on the findings.

In the instructions, the judge had advised the court members that the "law does not require an accused to prove his innocence or to produce any evidence whatever." Yet, when, in response to a question raised by the dissatisfied court member, trial counsel answered that he had "no initial date of current service," the judge remarked: "The accused probably knows when he came in the service. Why don't you ask him?"[1] Again, responding to the member's inquiry as to why the accused's organization had "waited so long" to write to the accused's mother, the judge observed that the matter had "nothing to do" with the case, but when the member insisted it was "a question of intent," the judge held a side-bar conference with counsel, at the end of which he announced that "counsel can answer this." Over trial counsel's objection to part of the language, he accepted, as a stipulation, a statement by defense counsel indicating there had been an "administrative mix-up" so that the accused's absence "was not discovered for quite some time"; this mix-up brought about "the delay in the initiation of the letter."

These recited instances, and the other alleged improprieties, are viewed by the Government as insignificant in nature and effect. They impress us differently. First, one of the defense responses produced evidence indicating that the organization to which the accused had been assigned did not even learn of his absence until about six weeks before his apprehension; this evidence weighed heavily against defense counsel's argument that one "of the most important factors" for the court members to consider was that the accused remained in his home community knowing "that the authorities . . . [were] after" him and that they knew "where" he was. Secondly, the two incidents are so opposed to the instruction that the accused was not required "to produce any evidence what-

[1] The Government concedes the judge's remark was improper. United States v Allinder, 9 USCMA 575, 26 CMR 355 (1958).

ever" that they provide a reasonable basis from which the court members could conclude that this rule of law did not apply to questions asked by court members. They had not been instructed that the accused had a right to remain silent; since a court member's questions had resulted in two responses by the defense, there was at least a fair risk that the court members believed the accused did not have a right to remain silent and that his silence could be used against him. That risk was particularly disadvantageous in regard to a question raised by the court member as to whether the accused had remained in his home community during his entire unauthorized absence. Defense counsel had so argued, and the trial judge had instructed the court members they could consider, as militating against a finding that the accused possessed the intent to remain away permanently, the fact that he had "remained at his home all during his absence." The questioning court member, however, insisted it was "not clear" to him that the accused "was really at home all the time." The trial judge indicated it was his "impression" that the stipulated Article 32 testimony by the accused had established the point and that was "how . . . [he] based" his instructions, but he admitted the point "didn't come out." The point was not clarified by the defense, as were the other cited matters. Since the record of trial indicates that the Article 32 testimony was taken into the closed session deliberations on the findings, there is a distinct risk that the accused's failure to respond directly in this instance was improperly weighed against him on the critical question of intent. See United States v Martin, 16 USCMA 531, 37 CMR 151 (1967).

The decision of the Court of Military Review is reversed, and the record of trial is returned to the Judge Advocate General of the Air Force for resubmission to it. In its discretion, the Court of Military Review may affirm findings of guilty of the lesser offense of unauthorized absence, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886, to which the accused pleaded guilty and reassess the sentence on the basis thereof, or it may direct a rehearing on the original charge.

Chief Judge DARDEN and Senior Judge FERGUSON concur.