**UNITED STATES**

v.

**William Thomas HOWELL III, 211 46 7060, Seaman Apprentice (E–2), U.S. Navy.**

**NMCM 83 4589.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 9 June 1983.

Decided 31 May 1984.

CDR David C. Larson, JAGC, USN, Appellate Defense Counsel.

LT Mark A. Zuboff, JAGC, USNR, Appellate Defense Counsel.

LT Michael P. Cogswell, JAGC, USNR, Appellate Government Counsel.

Before GORMLEY, Senior Judge, and KERCHEVAL and LECORNU, Judges.

PER CURIAM:

At a general court-martial, composed of officer members, appellant was convicted contrary to his plea of stealing $1,200 in U.S. currency from a shipmate, in violation of Article 121, Uniform Code of Military Justice (UCMJ) 10 U.S.C. § 921. He was sentenced to 2 years confinement at hard labor, total forfeiture of pay and allowances, reduction to the lowest enlisted pay grade and a bad-conduct discharge. The convening authority approved the sentence as adjudged.

Appellant has assigned four errors to this Court. Since his second assignment has merit warranting a rehearing, our discussion will be limited to that assignment, namely:

II.

APPELLANT WAS DENIED DUE PROCESS OF LAW WHEN SEVERAL ERRORS CUMULATED TO DENY APPELLANT A FAIR TRIAL UNDER THE SIXTH AMENDMENT.

Appellant assigns two errors within this single assignment: the first alleges impermissible comment by a government witness on the accused's election to remain silent during pretrial interrogation; the second alleges error in trial counsel's argument. Our decision to order a rehearing is based on the first included error; therefore, we will not discuss the second.

Appellant did not testify on the merits. During the government's case-in-chief, it was brought out that when the victim first reported the absence of his money, the investigating NIS agent asked several sailors if they knew anything about the money. According to the agent, appellant volunteered that he was aware that the victim had some money he kept in an envelope or envelopes. Appellant was then warned of his Article 31, UCMJ, 10 U.S.C. § 831, rights. Thereafter, he allowed the NIS agent to search his personal effects and locker, resulting in the discovery of the money. He then exercised his right to remain silent.

The government argued that it should be able to inquire into appellant's subsequent assertion of his right to remain silent to rebut the defense contention that appellant was set-up and that NIS did not adequately perform the follow-up investigation. In other words, the government argued that appellant's silence frustrated the investigation.

Apparently, the government based its request upon the defense counsel's cross-examination of the NIS agent:

Q. Now without Howell's assistance, I believe you stated at the Article 32 that you would not have had probable cause to gotten (sic) any search authentication is your belief?

A. Well—

Q. There's a good chance that you would have failed in establishing probable cause for a search authentication, isn't that true?

A. In the beginning certainly I didn't have probable cause to search 17 lockers.

DC. Thank you, I don't want any elaboration.

\* \* \* \* \* \*

Q. Had (appellant) not consented you would have had to obtain a search authorization, correct?

A. I might have entertained that....

After hearing the government's reasons, the military judge unequivocally stated, "Okay, well now that is not admissible for any purpose." Later, the following colloquy took place:

TC: Sir, just to clarify. The government then is not allowed to ask any further questions concerning Agent Cathcart with regard to subsequent efforts of questioning the accused. That's the ruling of the military judge, am I correct, sir?

MJ: Unless you have authority to show me to the contrary because it's my understanding that any interrogation or attempt at an interrogation in which the result is ["]No, I invoke my rights,["] is not admissible unless it comes in under some other theory.

TC: I understand, sir.

Following this admonition, the government conducted redirect examination of the NIS agent. The government then, on its own initiative, began a series of questions relating to the extent of the NIS investigative efforts. The government's second question was:

Q. There was an indication by the defense counsel that Howell may have helped you shorten the investigation, how did he help you?

A. Well, he was really of no help, he elected to remain silent and I never questioned him thereafter. (NO OBJECTION BY DEFENSE COUNSEL).

On cross-examination, the defense counsel asked:

Q. But you also testified that it was Howell who volunteered information initially when you were in legal hold?

A. ... We began to converse he elected to remain silent and thereafter provided no information....

Finally, when the military judge questioned the NIS Agent, the following exchange took place:

Q. Now, am I correct that you have indicated that at the point that the accused mentioned the word envelopes, at that point you no longer desired to question him about anything?

A. (Indicated that he felt a necessity to give appellant his Article 31 Rights). He subsequently elected to invoke his rights. I was precluded from interrogation at a later date, because he invoked his rights. MJ. The members are instructed to disregard that particular matter ah—it is not admissible....

■ The judge was in charge. He specifically directed the trial counsel not to elicit the fact of appellant's assertion of his Article 31 rights. When both the trial and defense counsel allowed the breach of his directive, there was no *sua sponte* imposition of judicial authority. Finally, when his own question led to a breach of his own directive, the military judge issued a general admonition to "disregard," vice a full and sufficient cleansing instruction against drawing any adverse or undue inferences merely from the accused's assertion of his right to remain silent. The military judge has the primary duty to instruct in this instance, despite a failure by defense counsel to object. *Cf. United States v. Ward,* 16 M.J. 341, 348 (CMA 1983).

■ "It has long been the position of (COMA) that it is improper to bring to the attention of the members that the accused has exercised his right to remain silent prior to trial. *See, e.g., United States v. Stegar,* 16 U.S.C.M.A. 569, 37 C.M.R. 189 (1967); *United States v. Tackett,* 16 U.S.C. M.A. 226, 36 C.M.R. 382 (1966); *United States v. Brooks,* 12 U.S.C.M.A. 423, 31 C.M.R. 9 (1961)." *United States v. Fitzpa-* *trick,* 14 M.J. 394, 398 (C.M.A.1983). In the case of constitutional error, the standard is not as the government asserts— lack of prejudice. Rather, we must look to see if it amounted to harmless error. It cannot be held to be harmless error unless we can "declare a belief that it was harmless beyond a reasonable doubt." *United States v. Ward,* 1 M.J. 176, 180 (C.M.A. 1975). In this instance, we find reversible error for which a rehearing should be directed.

There was no legally supportable basis for using appellant's exercise of his right to remain silent against him. The cross-examination of the NIS agent by the defense counsel was primarily directed at the agent's not following-up on leads relating to other suspects and not obtaining their fingerprints. The defense counsel's reference to the appellant's "assistance" was solely to point out the possible inconsistency with guilt of appellant's *initial* voluntary statement and consent to search. It was crucial for the defense case to establish that appellant was set-up and that his actions were inconsistent with guilt. To draw in any manner an inference of guilt from the mere assertion of an otherwise *neutral* legal act—to remain silent—is the specific inference sought to be avoided in *fair* trials. *See Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

We disapprove the findings of guilty as to the single Charge and specification and set aside the sentence. The record is returned to the Judge Advocate General of the Navy for transmittal to the convening authority who may direct a rehearing if deemed practicable.