**UNITED STATES**

·v.

**Charles Lee CHRISTIAN, Jr., 125 64 7773, Airman Recruit (E–1), U.S. Navy.**

**85 1073.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 22 Jan. 1985.

Decided 12 March 1986.

---

1. Art. 57

    LCDR ALVIN L. MCDONALD, JAGC, USN, Appellate Defense Counsel.

LOUIS P. FONT, Esquire, Civilian Defense Counsel.

LTCOL STEPHEN S. MITCHELL, USMCR, Appellate Government Counsel.

MAJ J.S. UBERMAN, USMC, Appellate Government Counsel.

Before COUGHLIN, Senior Judge, and MIELCZARSKI and DECARLO, JJ.

COUGHLIN, Senior Judge:

Appellant was tried and convicted at a special court-martial with members of larceny of $347.00 in violation of Article 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 921. He was sentenced to a bad-conduct discharge, confinement at hard labor for three months, and forfeiture of $400.00 pay per month for three months. The convening authority approved the findings and sentence without modification.

Appellant arrived at Naval Air Technical Training Center in Memphis, Tennessee directly from recruit training on 13 November 1984. He, along with three other recruits, was temporarily assigned to a barracks room which did not contain locks or lockers for the storage of personal gear. On the night of 14 November, one of appellant's roommates, Airman Tracy, placed $347.00 in cash in his (Tracy's) wallet, put the wallet in the pocket of his uniform, and placed the uniform under some other clothing. The next morning, Tracy discovered

his money missing. He immediately told his roommates of his loss, and later that morning, notified base security. Security investigators interviewed the three other occupants of Tracy's room, informed them of their rights, and received their consent to a search of their persons. A roll of money consisting of the same denominations reported missing by Airman Tracy was found on the appellant. Appellant was tried and convicted of larceny of Airman Tracy's funds.

We will specifically address two of the four assignments of error advanced by appellant, only the following of which has merit:

## I

THE MILITARY JUDGE ERRED IN ALLOWING INTO EVIDENCE STATEMENTS MADE BY THE CRIMINAL INVESTIGATOR THAT APPELLANT HAD INVOKED HIS RIGHTS UNDER ARTICLE 31, UNIFORM CODE OF MILITARY JUSTICE, 10 U.S.C. § 831, AND THAT APPELLANT, AFTER HAVING BEEN INFORMED OF HIS RIGHT TO REMAIN SILENT UNDER ARTICLE 31, UNIFORM CODE OF MILITARY JUSTICE, HAD REFUSED TO MAKE A WRITTEN STATEMENT OR ACKNOWLEDGE OWNERSHIP OF DISPUTED FUNDS.

During its case in chief, the Government elicited testimony from Chief Master-at-Arms Wilson, who was involved in the investigation into the loss of Airman Tracy's money. During his testimony, the following exchange took place:

Q. Now, you say, you went to your office. What did you do there?

A. We took Airman Christian with us back to the office, myself and Petty Officer Wheat. While we were there, I had—I took the money out of my pocket and had Petty Officer Wheat make a Chain of Custody on it and list on it and list all the numbers on the bills, initial them, and date them, *and then we tried to get Airman Christian to make a state-ment, sworn statement, which he refused. After all the money was put on the Chain of Custody, we asked him to sign it. He refused.* He made a statement to the effect that, "If I sign this, it means it belongs to me?" We told him, yes, and we had to read the whole chain of custody document to him about three times to ask him to sign for it. At one point he said, "I don't want the money, just get rid of it."

(Emphasis added).

Appellant argues before this Court that the reference to the fact that he refused to make a sworn written statement, and to his refusal to sign the chain of custody document constitute impermissible references to a valid exercise of his right to remain silent. We agree.

It is clearly improper to bring to the attention of the triers of fact that an accused, upon being given Article 31 warnings, exercised his right to remain silent. *United States v. Moore*, 1 M.J. 390 (C.M.A. 1976); *United States v. Nees*, 18 U.S.C. M.A. 29, 39 C.M.R. 29 (1968); *United States v. Martin*, 16 U.S.C.M.A. 531, 37 C.M.R. 151 (1967). *See also Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), and *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982).

In its brief, the Government argues that the fact that appellant had made verbal statements to investigators before being asked to make a written statement, transforms his refusal into a mere reflection of his choice of the form in which to put his statements and, as such, does not constitute an exercise of his right to remain silent. We disagree. The constitutional right to remain silent does not, as the Government suggests, disappear once a suspect chooses to make a statement in the face of protective warnings. The right can be invoked at any time during an interrogation at which point all questioning must cease. *See Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The fact that appellant previously had

made statements, whether oral or written, to investigators is irrelevant for the purposes of determining whether the reference at trial to his refusal to make a written statement is proper. In this case, appellant's refusal to make a written statement constituted a most fundamental exercise of the rights afforded to him under Article 31, UCMJ, and thus should not have been alluded to at trial.[1] *See United States v. Martin, supra; see also Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

■ Likewise, we find the appellant's refusal to sign a chain of custody document deserving of the same degree of constitutional protection. The Government argues that the chain of custody document is purely administrative in nature and hence not deserving of the protections afforded to testimonial or communicative evidence by Mil.R.Evid. 301(a). They further point out that the document was not used against the appellant in the classic sense in that the issue of possession of the stolen money was not in dispute at trial.

We disagree with the contention that this document falls outside the purview of Mil. R.Evid. 301(a). At the very least, the document establishes proof of possession of the stolen money, a fact which the appellant clearly has the right under Article 31, UCMJ, not to provide to the Government. This is so even where the document is used only in an administrative manner. The protections of Mil.R.Evid. 301(a) are dependent solely upon whether the evidence in question is testimonial or communicative in nature and do not hinge upon the ultimate use of such evidence at trial. Because the chain of custody document establishes on its face that the money recovered at the scene was taken from the appellant's person, we find that it is testimonial in nature and thus properly within the evidentiary protections of Mil.R.Evid. 301. Accordingly, error occurred when the Government

referenced appellant's initial refusal to sign the form.

We must now determine whether the appellant was prejudiced by these errors. Error of constitutional dimension, as occurred in this case, require reversal unless it can be determined beyond a reasonable doubt that the error was harmless. *United States v. Remai,* 19 M.J. 229 (C.M.A.1985); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The record contains overwhelming independent evidence of appellant's guilt and, therefore, we entertain no doubt that he would have been found guilty had the improper references not occurred. Accordingly, we find these errors to be harmless. *United States v. Remai, supra; United States v. Ross,* 7 M.J. 174 (C.M.A.1979).

## II

APPELLANT'S ALLEGED CONSENT TO ALLOW A PERMISSIVE SEARCH OF HIS PERSON AND EFFECTS WAS OBTAINED IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

■ Appellant argues that the military judge erred in failing to suppress the money found on his person because his consent to the search was coerced and hence invalid under the Fourth Amendment. We disagree. The test in reviewing a consent search is whether, in the totality of the circumstances, the consent is given voluntarily and without coercion. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Middleton,* 10 M.J. 123 (C.M.A.1981). The conclusion that there was a valid consent to search is usually a factual one that should be accepted on review unless it is unsupported by the evidence or clearly erroneous. *United States v. Turpin,* 707 F.2d

---

1. The Government points out in its brief that the improper testimony passed without objection by the trial defense counsel. This point is irrelevant, however, given the fact that the military judge was under a *sua sponte* duty to give a curative instruction notwithstanding defense counsel's failure to object. *United States v. Howell,* 18 M.J. 573 (N.M.C.M.R.1984). *See also United States v. Ward,* 16 M.J. 341, 348 (C.M.A. 1983).

332, 334 (8th Cir.1983). *See also United States v. Middleton,* 10 M.J. at 132–33. The trial court herein found that the appellant gave free and voluntary consent to be searched. The record is devoid of any evidence of coercion, either actual or implied. In fact, the appellant, when asked at trial why he agreed to be searched, stated: "I agreed because I felt I had nothing to hide." (R. 74). Under these circumstances, we cannot say that the trial court's finding of consent was clearly erroneous; indeed, it was clearly supported by the evidence.

Accordingly, the finding of guilty and the sentence as approved on review below are affirmed.

Judge MIELCZARSKI and Judge DE-CARLO concur.