UNITED STATES, Appellee

v.

RICHARD E. GILBERTSON, Sergeant First Class,
U. S. Army, Appellant

1 USCMA 465, 4 CMR 57

No. 318

Decided July 22, 1952

LT. COL. James C. Hamilton, USA, 1ST. LT. Patrick H. Thiessen, USA, and 1ST. LT. Charles H. Taylor, USA, for Appellant.

LT. COL. Paul J. Leahy, USA, for Appellee.

Opinion of the Court

ROBERT E. QUINN, Chief Judge:

Petitioner was tried and convicted by general court-martial in Korea for the offense of misbehavior before the enemy in violation of Article of War 75, 10 USC § 1547, and absence without leave in violation of Article of War 61, 10 USC § 1533. The sentence as approved extends to a dishonorable discharge, total forfeiture of pay and confinement at hard labor for fifteen years. Army reviewing authorities have upheld the findings. We granted petition for review on the issue of whether the instructions of the law officer as to the elements of the offense of misbehavior were sufficient.

We have made clear, in previous opinions, the basic position of this Court in relation to instructions by the law officer on the elements of the offense charged. See United States v. Ginn (No 263), 1 USCMA 453, 4 CMR 45, decided July 10, 1952, and cases cited therein. It should be obvious from these decisions that we consider it vital that the court be informed, in accordance with the mandate of Congress, of the law as it relates to the offenses charged. The problem before us requires that we measure the instructions of the law officer against this standard.

The specification alleges that petitioner misbehaved himself before the enemy by absenting himself without authority while contact with the enemy was imminent. This was laid as a violation of Article of War 75, supra, which provides as follows:

"Misbehavior before the enemy (article 75). Any officer or soldier who, before the enemy, misbehaves himself, runs away, or shamefully abandons or delivers up or by any misconduct, disobedience, or neglect endangers the safety of any fort, post, camp, guard, or other command which it is his duty to defend, or speaks words inducing others to do the like, or casts away his arms or ammunition, or quits his post or colors to plunder or pillage, or by any means whatsoever occasions false alarms in camp, garrison, or quarters, shall suffer death or such other punishment as a court-martial may direct."

We have substantial doubt whether mere absence without leave while before the enemy, without more, constitutes misbehavior. See United States v. White, 10 BR–JC 117; United States v. Walker, 12 BR–JC 165; Article 99, Uniform Code of Military Justice, 50 USC § 693. However, we shall assume, for the purposes of testing the law officer's instructions, that the specification in this case properly alleges an offense in violation of Article of War 75, supra.

The instruction given by the law officer is as follows:

". . . that the accused was serving in the presence of an enemy; and acts or omissions constituting misbehavior of the accused as alleged. The court's attention is invited to paragraph 163, page 216, MCM, 1949, as to the discussion of the offense in Charge I. . . ."

This instruction follows precisely the "elements" listed in the Manual discussion of the offense, but obviously contains no legal standard of misbehavior. Manual for Courts-Martial, U. S. Army, 1949, paragraph 163a. We have previously condemned instructions which merely refer to the acts alleged in the specification. See United States v. Welch, (No. 196), 1 USCMA 402, 3 CMR 136, decided May 27, 1952. The Manual for Courts-Martial, United States, 1951, states in relation to instructions that "information as to the elements of an offense may be obtained from the subparagraphs entitled 'Discussion' and 'Proof' which appear in the discussion of the punitive article

under which the offense is charged." This language gives the law officer of the general court-martial and the president of a special court-martial no license to confine the instruction to the subparagraph entitled "Proof" where that subparagraph obviously does not contain a complete statement of the elements of the offense. To do otherwise would be inconsistent with both the spirit and the letter of Article 51 (c), 50 USC § 626, which requires instructions on the elements of the offense. This instruction gave the court no real legal standard against which to measure the conduct as alleged or proven.

It is, however, contended by the Government that the instruction was saved by the law officer's reference to the Manual paragraph for a discussion of the term "misbehavior." We note that an Air Force board of review has held that reference to the Manual discussion of an offense does not constitute an adequate substitute for full oral instructions. United States v. Anderson, 1 CMR 345, decided December 6, 1951. To the contrary, however, is United States v. Shepard (BR) 2 CMR 202. We are not impressed with the Government argument. Assuming, with substantial doubts which we reserve, that the Manual discussion of the term misbehavior is adequate, this court-martial was not provided with instructions embodying even that discussion.

Article 51(c), supra, specifically requires that the law officer of a general court-martial and the president of a special court-martial shall, in the presence of the accused and counsel, instruct the court as to the elements of the offense. This instruction must be given "before the court closes to vote on the findings." Manual for Courts-Martial, United States, 1951, paragraph 39b. In commenting on Article 51, supra, during legislative consideration, Senator Kefauver had this to say:

". . . it should be pointed out that under article 51 the court will have the benefit of the law officer's instructions on the elements of the offense, the presumption of innocence, and the burden of proof, and

that the same article does not prevent him from giving further instructions on other appropriate matters." [96 Cong Rec 1359]

• • • • • • •

"Answering more directly the question of the distinguished Senator from Missouri, it seems to me that following the jury concept in the matter is a pretty safe thing to do. The law officer is distinguished from a member of the court, and he must be a lawyer. He instructs the court on the record." [96 Cong Rec 1360]

• • • • • • •

"This is merely getting a little closer to the civilian approach in court-martial proceeding. It approaches the judge idea. I think in its general tendency and general aim the pending bill, while not going overboard in attempting to adopt civilian technique, is an attempt to bring the system a little further into harmony with civilian methods. This method of having the law officer instruct, and what he says appear on the record, and not retire and not vote with the court, is exactly what is done in civilian trials before juries today." [96 Cong Rec 1360]

• • • • • • •

"We believe the one particular advantage our proposal has over the procedure whereby the law officer retires with the members of the court into executive session, is that whatever the law officer may say will be on the record, so that the reviewing authorities may see what his attitude about the matter was and what he had to say about it." [96 Cong Rec 1361]

It is appropriate, therefore, that we should give respectful consideration to civilian procedure on instructions. Pertinent are the remarks of the court in United States v. Noble, 155 F2d 315, 318 (CA3d Cir):

"Moreover, we think that even if the information had contained a full recital of all the applicable legal principles the trial judge would not have fulfilled his duty in this regard merely by sending the information out

with the jury to read if they chose to do so, during their deliberations. For not only are counsel and the defendant entitled to hear the instructions in order that they may, if they are incorrect, object to them and secure their prompt correction by the trial judge, but it is equally important to make as certain as may be that each member of the jury has actually received the instructions. It is therefore essential that all instructions to the jury be given by the trial judge orally in the presence of counsel and the defendant. We conclude that the failure in the present case to instruct the jury upon the elements of the crime was error."

In Morris v. United States, 156 F2d 525, 531 (CA9th Cir), the court states that by the great weight of authority the "court must directly and not by reference to a document in the jury's possession define the offense charged in clear and precise language," citing cases and texts. In United States v. Max, 156 F2d 13, 16 (CA3d Cir), the court had this to say in regard to instructions:

"The correct procedure is carefully pointed out in our recent decision in United States v. Noble, 155 F2d 315, where we hold that it is necessary for the court to charge orally the substance of the crime, first in order that the defendant may hear it and except thereto if he deems it advisable and second 'to make as certain as may be that each member of the jury has actually received the instructions.'"

In the report of a Committee of the Section of Judicial Administration of the American Bar Association, titled "Instructions to Jurors" it was written:

"The judge instructs the jury orally at the conclusion of the trial and after the arguments of counsel. In other words, the last thing that the jury hears before retiring to deliberate is the judge's charge.

"The judge instructs the jury on the pertinent principles of law. This is the minimum that his charge must contain." [10 FRD 409, November 1950].

The reasons given in these Federal cases for requiring full oral instructions are sound, and become even more persuasive when applied to courts-martial procedure. If the law officer merely refers to a Manual discussion of the offense, we have no guarantee that the members will read the pertinent parts. Further, they may not understand it and may well be confused by additional matter appearing in the text, not applicable to the case before them. The law officer of a general court and the president of a special court must endeavor to fulfill their responsibility to act as near like a civilian judge as possible. This responsibility cannot be met by a perfunctory disposition of matters where an individual's life or freedom is in the balance. The accused and his counsel have the right to hear instructions which form the framework of law to which the evidence must be fitted. These instructions should be clear, precise and unambiguous. If full instructions are not given in open court, defense cannot evaluate their correctness and has no opportunity to object. Further, if no affirmative statement of the instructions appears in the record, reviewing authorities are handicapped in ascertaining the legal standard applied by the court in its deliberations on the findings.

We have no disposition to criticize referral to the Manual for pertinent amplifying material after full instruction on the elements has been given. This may well be helpful to the court. However, our previous decisions on the necessity of instructions in different types of cases emphasize the duty of the law officer and the president to consider carefully the charges, the lesser included offenses, the evidence, and the defense theories, before instructing the court on the law. This responsibility is a serious one and cannot be fulfilled by summary reference to a Manual discussion. We therefore conclude that referral to the Manual does not constitute an adequate instruction and cannot cure an otherwise inadequate instruction.

468

The inadequacy of the instructions here requires reversal. "It is not for us to determine what the █ court members would have found had they been properly advised on the elements." United States v. Rhoden, (No. 153), 1 USCMA 193, 2 CMR 99, decided February 26, 1952; Little v. United States, 73 F2d 861, 866 (CA10th Cir). The decision of the board of review is reversed as to the findings on the misbehavior charge and the case is remanded to The Judge Advocate General for rehearing on that charge or for referral to a board of review for reconsideration of the sentence.

Judge BROSMAN concurs.

LATIMER, Judge (dissenting):

I dissent.

While I do not necessarily recommend the method used by the law officer in instructing the court I, nevertheless, am unable to find any material prejudice to a substantial right of the accused. Such being the case, I do not concur in the opinion of the Court.

The Manual for Courts-Martial, United States, 1951, paragraph 73a, in discussing instructions provides as follows:

". . . The instruction may be given in the language of the applicable subparagraph. . . ."

It is admitted that the law officer gave the elements of the offense in the exact wording of the subparagraph (designated as "Proof") of the Manual for Courts-Martial, U. S. Army, 1949, applicable here, but some suggestion is made in the Court's opinion that his failure to comply with the Manual and read the subparagraph entitled "Discussion" was prejudicial error. Because of an assumption made, the Court escapes a direct holding that a reading of the "Discussion" part of the Manual would have sufficed. However, in so far as my theory is concerned, it makes little difference as the discussion would not enlighten the members of the court-martial on any element of the offense. This is the portion of the paragraph which applied to misbehavior:

"Misbehavior is not confined to acts of cowardice. It is a general term and as here used it renders culpable under the article any conduct by an officer or soldier not conformable to the standard of behavior before the enemy set by the custom of our arms. . . ."

The quoted provision deals with the abstract and courts ordinarily do not favor abstract dissertations on the law. Moreover, in view of the fact that the law officer specifically told the court it must find the accused deserted in the presence of the enemy the only elements not covered are those encompassed within the quoted definition of misbehavior. I believe that any member of a court-martial would know that word to mean conduct not conformable to the standards set by the custom of the service. I, therefore, fail to see how reading from the Manual would have added anything of value to the instructions. Be that as it may, the important question in this case is whether the instructions, which were read to the court, are sufficient to define the elements of the offense. It is this question which causes me to part with the majority of the Court.

While I will refer later to the principal Federal case cited in the Court's opinion, at this point I desire to point out that this is not a case where the law officer gave no instructions. He did not tell the court that the instructions could be gathered by browsing through the Manual or the file. He gave complete instructions on the specification of the second charge, he gave the one on the specification in issue, and he gave the general instruction required by the Code. I mention these matters for the reason that I desire to emphasize the fact that there was not a total failure to comply with the mandate of Congress. At best, the law officer's error, if any, was in giving incomplete instructions and under the uniform holdings of the Court this brings into consideration the question of prejudice and failure on the part of the accused to request additional or amplifying instructions. I omit a discussion of the latter because I believe the former disposes of this appeal.

**469**

The first charge and specification alleged the offense in the following language:

"CHARGE I: Violation of the 75th Article of War.

"SPECIFICATION: In that Sergeant First Class Richard E. Gilbertson, Company C, 7th Cavalry Regiment, did, at or near Chunchon, Korea, on or about 4 April 1951, misbehave himself before the enemy, by absenting himself without leave from his organization, which was then in a front line defensive position, while contact with the enemy was imminent, and did remain absent without leave until about 2 May 1951."

If, as the Court's opinion assumes, the specification alleges an offense, then the elements are: (1) The accused was in the presence of the enemy, (2) he absented himself without authorization, (3) his unit was then in a front-line defensive position, and (4) contact with the enemy was imminent. The question then narrows down to the simple issue of whether the court members were instructed that these were the elements they must find to return a finding of guilty on the first specification. The law officer selected the Manual method in which to deal with these. Better practice would be specifically to mention them, but under the Manual the law officer is permitted to couch the instructions in the language of the subparagraph. Assuming he did not select the best method, I cannot follow the doctrine that reference to certain elements is prejudicial, particularly in cases such as this where issues are not complicated and reference is not confusing.

In certain instances referring to the charge might be misleading, uninformative and totally inadequate, but in others it might clearly define the offense. In this particular instance the first element was specifically mentioned. As to the other three the court was informed that the Government must prove the acts and circumstances as alleged. Those had to be the elements identified above as (2), (3) and (4).

I believe members of courts-martial strive to follow instructions and when they are told they must find certain of the elements of misbehavior by finding that the specific acts alleged were committed by the accused that they would so find before they returned a guilty verdict. Maybe the framework outlining the offense is not as substantial as it could be, but it is there and clearly visible. If it were hazy and confusing no one seems to have sensed that condition until the cause reached this Court, as it was first suggested upon petition for review.

In connection with my belief that the instructions were not confusing and were well understood by everyone participating in the trial before the courts-martial, I quote the language defense counsel used in his final argument for a finding of not guilty:

". . . To prove the accused guilty beyond a reasonable doubt, every element of the offenses must be proved. I would like to look at Charge I and its specification in the light of the evidence before this court. It is alleged in part that Sergeant Gilbertson misbehaved himself before the enemy by absenting himself without leave from his organization, which was then in a front line defensive position, while contact with the enemy was imminent. . . ."

After making this statement defense counsel went to some length to attack the evidence of the Government for its insufficiency to establish each of those elements.

In order to determine whether the Court is not confusing substance with form, I test this case by the reasoning announced in United States v. Noble, 155 F2d 315, quoted in the Court's opinion. Unfortunately, that case does not contain a statement of facts, neither does it include the substance of what might have been said by the trial judge. However, it pronounces the rule that he must instruct the jury on the elements of the offense which the defendant is alleged to have committed. We have announced a similar rule. In addition, that opinion lays out the reasons why he should. These, as applied to the military practice are: (1) So the court-martial can apply the law to

the facts as found; (2) accused and his counsel are entitled to hear the instructions; (3) they must be afforded an opportunity to except; (4) they should have an opportunity to suggest corrections; (5) each member of the court-martial must actually receive the instructions. Each of these tests has been met by the instructions given in this case, and, as a matter of fact, the law officer and counsel for accused placed their stamp of approval on the form used.

I will attempt to set out my basis for making the preceding statement and I will deal with the tests in the order stated: (1) The elements were included in the instruction by mention and reference, and the court-martial could apply the facts to the instructions. (2) Accused and his counsel heard each and every instruction. The total time between opening of the court-martial and closing for a finding on the charges was approximately one hour. The prosecution announced in open court the general nature of the charge in the wording of the specification. The specification was read to accused and he entered a plea of not guilty. Counsel for the accused restated the elements in his final argument. (3) and (4) Counsel for the accused could have expected to the instructions given and offered any corrections, but no action was taken. The accused was served with a copy of the specifications prior to trial, the file was present in court, and counsel for the accused fully understood the nature and extent of the elements defined by the law officer. (5) Each member of the court actually heard and received the instructions, as those referred to by incorporating the specification were openly mentioned three times. In addition, if the file was left with the court they were made available in writing.

Facing the issue squarely, I am of the opinion the Court finds prejudicial error because the law officer did not read to the members of the court the alleged acts of misbehavior which had been read to them once and told to them twice, all within a period of one hour. I cannot find material prejudice to the substantial rights of the accused in a case so dressed up in simplicity, so clear in posture, and so well understood by those participating in the trial.

For the foregoing reasons I would affirm the decision of the board of review.